**Jimmie L. RODGERS and John A. Turner, Appellants,**

v.

**UNITED STATES STEEL CORPORA-TION et al., Appellees.**

No. 76–1297.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 15, 1976.

Decided July 28, 1976.

366

Bernard D. Marcus, Paul H. Titus, Jon G. Hogue, Kaufman & Harris, Pittsburgh, Pa., Jack Greenberg, James M. Nabrit, III, Barry L. Goldstein, Deborah M. Greenberg, Eric Schnapper, New York City, Bruce W. Kauffman, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., Thomas M. Kerr, Pittsburgh, Pa., for appellants.

Leonard L. Scheinholtz, Walter P. DeForest, Patrick W. Ritchey, C. Arthur Dimond, Reed, Smith, Shaw & McClay, S. G. Clark, Jr., Pittsburgh, Pa., for appellees.

Carl B. Frankel, Rudolph L. Milasich, Jr., Michael H. Gottesman, Bredhoff, Cushman, Gottesman & Cohen, Washington, D.C., Bernard Kleiman, Chicago, Ill., for United Steelworkers of America, AFL–CIO and its Local 1397.

Abner W. Sibal, William L. Robinson, David W. Zugschwerdt, Michael D. McCafferty, Robert T. Moore, Washington, D.C., E.E.O.C., appearing specially in the court below.

Before CLARK, Associate Justice,* and GIBBONS and HUNTER, Circuit Judges.

JAMES HUNTER, III, Circuit Judge:

On March 8, 1976, the district court approved appellees' request to make a tender of back pay to certain members of the class represented by appellants for a possible settlement of their claims in this action for injunctive and monetary relief from alleged racial discrimination in employment. Also, the court denied appellants' motion for a preliminary injunction to bar the tender pending an evidentiary hearing. The threshold issue presented by this appeal is whether the district court's order is appealable. We conclude that the March 8 order is not appealable and accordingly dismiss the appeal.[1]

## I

Appellants Rodgers and Turner are black employees of the United States Steel Corporation and members of Local 1397, United Steelworkers of America and United Steelworkers of America, AFL–CIO. They commenced this action against the company and the unions in the Western District of Pennsylvania in August 1971 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. and other statutes seeking injunctive relief and back pay to remedy racial discrimination at the Homestead Works of United States Steel. On December 9, 1975, the district court certified the case as a class action;[2] the class consists of more than 1200 black workers at the plant.

On April 12, 1974, the United States filed a complaint in the Northern District of Alabama against nine steel companies, including United States Steel, and the United Steelworkers of America. The complaint alleged a pattern or practice of discrimination in employment against women, blacks and Spanish-surnamed Americans in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and contractual obligations under Executive Order 11246, 3 C.F.R. § 169. Simultaneously with the filing of the complaint, the parties submitted for approval by the court a nationwide settlement in the form of two consent decrees. Appellants moved to intervene to challenge the terms of the consent decrees. The district court granted the motion to intervene but rejected appellants' objections to the decrees. Thereafter, the Fifth Circuit affirmed. *United States v. Allegheny-Ludlum Industries, Inc.*, 63 F.R.D. 1 (N.D.Ala.1974), aff'd, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

The terms of the consent decrees are discussed at length in the Fifth Circuit's opinion and need not be repeated here. It is sufficient to state that the defendant companies and union agreed in the consent decrees immediately to implement hiring and seniority reforms and to establish a $30,940,000 back pay fund to be paid to minority and female employees injured by the unlawful practices alleged in the complaint. No employee is a party to the consent decrees and the decrees do not seek by their terms to bind the employees by way of res judicata or estoppel. However, as a condition to their acceptance of the back pay which is to be tendered, employees are required to execute releases waiving their rights to seek further injunctive or mone-

---

* Sitting by Designation.

1. On June 3, 1976, we granted appellants' motion to consolidate the instant appeal with their petition for mandamus at No. 76–1340, in which appellants sought vacation of a protective order prohibiting their counsel from discussing certain information. The petition for mandamus also was granted. *Rodgers v. United States Steel Corp.*, 536 F.2d 1001 (3d Cir.

1976). We have previously considered other aspects of this litigation in *Rodgers v. United States Steel Corp.*, 508 F.2d 152 (3d Cir.), *cert. denied*, 420 U.S. 969, 95 S.Ct. 1386, 43 L.Ed.2d 649 (1975).

2. *Rodgers v. United States Steel Corp.*, 69 F.R.D. 382 (W.D.Pa.1975).

tary relief for any alleged discriminatory practices which were in existence prior to the date on which the decrees were entered. Permission must be obtained from those district courts where private class actions are pending before the tender of back pay and release can be sent to such class members.[3]

On January 22, 1976, United States Steel and the United Steelworkers filed a joint motion in the Western District of Pennsylvania for permission to make the tender of back pay to and seek releases from certain employees of the Homestead Works who are members of the *Rodgers* class.[4] The parties estimate that of the 1200 members of the class, only 670 are eligible to receive back pay under the consent decrees.[5] Appellants opposed the joint motion. They requested a hearing pursuant to rule 23(e) of the *Federal Rules of Civil Procedure*[6] on the ground that the tender constituted a "dismissal or compromise" of the action. In addition, they contended that the injunctive relief under the consent decrees and the amount of back pay proposed to be tendered were inadequate, that the notice of

rights and related documents were, *inter alia*, unintelligible, inaccurate in portions and deterred employees from seeking advice of counsel and that the tender procedure was coercive. Appellants also filed a motion for a preliminary injunction which sought to enjoin the tender "pending an evidentiary hearing." App. at 944a. Without ruling on the request for a rule 23(e) hearing, the court held a hearing on February 17 and 18 on the questions whether the tender offer, the notice of rights and release form were fair and adequate and whether further proceedings would be requested.[7]

On March 8, 1976, the district court denied appellants' motion to enjoin the tender preliminarily and approved the tender of back pay to and solicitation of releases from the employees at the Homestead Works. The court noted at the outset that several issues had been litigated and decided in other forums and were not before it in the instant proceeding; these issues were the adequacy of the total back pay fund of $30,940,000 and of the injunctive relief provided by the consent decrees, and the sub-

3. We have been informed by counsel that approval of the procedures for tender has been obtained from the district courts in all of the 14 pending private actions wherein class members are eligible for the tender. Brief for United States Steel at 10. By mid-May, the tender of back pay had been made at all of the 254 plants affected by the consent decrees, except the Homestead Works. *Id.* at 9–10. In our opinion granting appellants' petition for mandamus at No. 76–1340, note 1 *supra*, we stayed the tender at the Homestead Works for a period of 30 days from June 3, 1976.

4. The United States Equal Employment Opportunity Commission was granted leave to make a special appearance in the court below for the limited purpose of seeking court approval of certain letters and forms to be sent to employees entitled to back pay under the consent decrees who have charges pending with the Commission. The employees were separated into three categories: those whose charges fell "wholly within the Consent Decree"; those whose charges fell partially within the scope of the decree; and those whose charges were wholly unrelated to the decrees. To the first group, the Commission proposed to send a letter recommending that the employee accept the tender; letters to the latter groups contain no recommendation regarding the tender. All let-

ters informed the employees that they would have an opportunity to meet with a representative of the Commission before making their decision. Response of the United States Equal Employment Opportunity Commission to Appellants' Brief at App. A.

5. Brief for Appellants at 6. Only 670 class members are blacks whose date of employment preceded January 1, 1968 and either were still employed as of April 12, 1974, the date on which the decrees were entered, or retired in the two years preceding April 12, 1974. See Consent Decree I at 55, *United States v. Allegheny-Ludlum Indus., Inc.*, No. 74 P 339–5 (N.D.Ala. Apr. 12, 1974), App. at 57a.

6. Rule 23(e) provides:
   Dismissal or Compromise. A class action shall not be dismissed or compromised without approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.
   F.R.C.P. 23(e).

7. In addition to the two full days of hearings devoted to the tender, appellants filed nine depositions on these subjects on February 23, 1976.

stantive legality of the release. App. at 12a–13a.[8] A rule 23(e) hearing was denied because in the court's view the rule "does not attach to direct settlements with *individual* class members which have no effect upon the rights of others," but rather is "limited to the dismissal or compromise of the class action *itself.*" App. at 14a. The court stated that it could not characterize the amount of back pay to be tendered to *Rodgers* class members as "unfair or unreasonable." In the court's opinion, the proposed notice of rights and release documents "fully apprise recipient employees of the terms of the tender and of the options that are open to them . . . and assure, to the extent reasonably possible, that affected members of the plaintiff class who execute waivers will do so knowingly and voluntarily." *Id.* at 19a. Finally, the court found the one-step procedure for the tender—transmission of the back pay check together with the notice and release forms—not to be "inherently coercive," and approved of the sending of certain letters by the Equal Employment Opportunity Commission to members of the *Rodgers* class who have charges pending before the Commission. *Id.* at 23a–25a; *see* note 4 *supra.*

Thereafter, appellants filed a motion to certify the court's order under 28 U.S.C. § 1292(b), which motion the court denied on March 9, 1976. App. at 945a–47a. The instant appeal followed.[9] Appellants contend that the court's order is appealable under 28 U.S.C. § 1291 as a "collateral order," or, in the alternative, under 28 U.S.C. § 1292(a)(1) as an order denying injunctive relief. We disagree.

8. On January 5, 1976, the court wherein the consent decrees were originally entered amended one aspect of the release provision to reflect the actual agreement of the parties to the consent decrees. App. at 64a. Appellants sought to intervene to challenge the legality of the amendment but were denied intervention. The district court's approval of the amendment is currently on appeal to the Fifth Circuit.

9. We have reviewed the procedural history of this appeal in *Rodgers v. United States Steel Corp.,* 536 F.2d 1001 (3d Cir. 1976).

## II

### A. *Section 1291.*

The district court's order is certainly not a "final decision" under 28 U.S.C. § 1291[10] in the ordinary sense that it finally determines all of the rights of the plaintiffs and the class against the defendants and terminates the litigation. Appellants assert, however, that the court's order is appealable under section 1291 by virtue of the "collateral order" doctrine enunciated in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and most recently reaffirmed in *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 171–72, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). *Cohen* recognized an exception to the "final judgment" rule for that

small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

337 U.S. at 546, 69 S.Ct. at 1225.

In this Circuit, the emphasis in the above quoted language has always been placed on the words *"small class,"* lest the exception swallow up the salutary general rule. *See, e. g., Rodgers v. United States Steel Corp.,* 508 F.2d 152, 159 (3d Cir.), *cert. denied,* 420 U.S. 969, 95 S.Ct. 1386, 43 L.Ed.2d 649 (1975); *Hackett v. General Host Corp.,* 455 F.2d 618, 621 (3d Cir.), *cert. denied,* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972); *Borden Co. v. Sylk,* 410 F.2d 843, 845–46 (3d Cir.1969). Our decision in *Rodgers v. United States Steel*

10. Section 1291 provides:

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

28 U.S.C. § 1291.

*Corp., supra* at 159, identified three requisites to the application of the collateral order doctrine:

> The order must be a final rather than a provisional disposition of an issue; it must not be merely a step toward final disposition of the merits; and the rights asserted would be irreparably lost if review is postponed until final judgment.

In addition, cognizant as we are that no "verbal formula" is of "unerring accuracy or provide[s] an utterly reliable guide for the future," there must be "some evaluation of the competing considerations underlying all questions of finality—'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" *Eisen v. Carlisle & Jacqueline, supra,* 417 U.S. at 170–71, 94 S.Ct. at 2149, *quoting Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 94 L.Ed. 299 (1950); see *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); *Samuel v. University of Pittsburgh,* 506 F.2d 355, 358 (3d Cir.1974); *Borden Co. v. Sylk, supra* at 846. In our view, the district court's order fails in all respects to satisfy these criteria.

■ The court's order clearly does not finally determine the rights of any member

of the *Rodgers* class ineligible for the back pay offer; their rights remain unaffected by the tender.[11] Nor did the court, contrary to appellants' contention, finally decide the issues of the legality and enforceability of the release or of the effect the execution of a release by a class member will have on his status in the class action or on his ability to seek redress in a separate action.[12] And, of course, although the court did approve the language of the notice of rights and release form, it could not have finally determined at this time the voluntariness *vel non* of any particular class member's waiver of his rights. Resolution of these issues may come at a later date and perhaps even in another forum.[13] The court's disposition of these issues is just the kind of "tentative, informal or incomplete" decision to which the collateral order doctrine does not apply. *See Eisen v. Carlisle & Jacqueline, supra,* 417 U.S. at 17a, 94 S.Ct. 2140; *Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 546, 69 S.Ct. 1221. We also fail to discern how class members who accept the tender will irreparably lose any rights they might have regarding these issues if the instant appeal is not permitted.

While the court did finally determine the issue of whether and on what terms and

---

11. Appellants suggest that the ineligible class members face irreparable injury if the tender takes place because the class may be so decimated that the class action could not be effectively prosecuted. The contention is meritless. First, the argument is of the "death knell" variety rejected by this court in *Hackett v. General Host Corp.,* 455 F.2d 618, 621–26 (3d Cir.), *cert. denied,* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). *See Samuel v. University of Pittsburgh,* 506 F.2d 355, 360 (3d Cir. 1974). Second, even if ·every eligible class member accepted the tender, a wholly speculative proposition, there would still be nearly 600 members remaining in appellants' class, fully able to continue the action against the appellees. *See Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.,* 455 F.2d 770, 773 (2d Cir.1972).

12. The court did state that "the membership of the plaintiff class in [the *Rodgers* ] suit may require redefinition upon completion of the tender process. . . ." App. at 15a. But even appellants virtually admit that the ques-

tion of what effect an execution of a release will have on an individual's status in the pending action was left undecided by the court. Reply Brief for Appellants at 3–6. Appellants have urged this court to delineate the procedures to be followed by the district court after the tender process is completed. *Id.* We need not and do not decide that issue here.

13. For instance, should the court enter final judgment of dismissal against a class member who executed a release, that party might contest the dismissal after final judgment in this action or possibly even earlier if certification were granted under 28 U.S.C. § 1292(b) or rule 54(b) of the *Federal Rules of Civil Procedure.* We do not decide which provision would be the preferable means for challenging such an order. *See Samuel v. University of Pittsburgh, supra* at 360; *Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Hackett v. General Host Corp., supra* at 623–24.

conditions appellees could make the tender, the order is not in other respects comparable to the orders in *Cohen* and *Eisen.* Unlike the situation in *Cohen* and *Eisen,* there is no possibility that the rights of the *Rodgers* class members will be irreparably lost by postponing appellate review of the court's order until final judgment. We described in *Samuel v. University of Pittsburgh, supra* at 359, the possible irreparable effects of the district courts' orders in those cases:

> In *Cohen* the district court, in the face of a statute which allowed a corporation to demand security for its litigation expenses from the plaintiffs in a stockholder's derivative action, had allowed the plaintiff to proceed without posting such security. 337 U.S. at 543–545, 69 S.Ct. 1221, 93 L.Ed. 1528. The order appealed from thus determined who would bear the risk of loss of the corporation's counsel fees during the pendency of the litigation. An improper allocation of risk created by the order could not have been repaired retrospectively in an appeal brought after the district court litigation had reached its conclusion. *Id.* at 546, 69 S.Ct. 1221, 93 L.Ed. 1528. Similarly, the district court in *Eisen* had allowed the plaintiff class to proceed without bearing, during the pendency of the litigation, the risk of loss of the expense of notification, in the face of the "usual rule . . . that a plaintiff must initially bear the cost of notice to the class." 417 U.S. at 178, 94 S.Ct. at 2153. If the Court had not allowed the appeal, the defendants might ultimately have prevailed on the merits and yet have been unable to recover the cost of notice from the representative plaintiffs.

Here, to the extent the court's approval of specific language in the notice and release forms, or of the amount offered, or of the sending of the Equal Employment Opportunity Commission letters or of the procedure for the tender process impacts on the voluntariness of the execution of a release by a particular class member or on the enforceability of the release by appellees, that approval can be effectively reviewed at final judgment with no attendant loss of rights. Should the tender be subsequently invalidated, appellants will be placed in the same position as had the tender never occurred.[14]

In essence, the court's order merely permits defendants in a pending class action to communicate with certain members of the plaintiffs' class for the purpose of seeking a *possible* settlement of their *individual* claims. To permit immediate appeals of such orders would only further increase the burden on the appellate courts. Such an increase is unjustifiable where, as here, no rights will be lost by delay. It would indeed be anomalous if the instant order were immediately appealable under *Cohen* while orders granting or refusing class action status or decertifying a class are not. *See Samuel v. University of Pittsburgh, supra; Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Hackett v. General Host Corp., supra.*

Appellants contend that the court's denial of a rule 23(e) hearing is immediately appealable under *Cohen.* While the court's order did settle conclusively appellant's claim of entitlement to such a hearing, we are not satisfied that the other criteria of the collateral order doctrine have been met. In our view, that decision can be effectively reviewed at final judgment, or perhaps earlier in other cases via certification, without

14. The instant case is similar to *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.,* 455 F.2d 770 (2d Cir.1972). In *Weight Watchers,* the Second Circuit held not appealable an order providing that a defendant could, subject to terms approved by the court, engage in discussions with franchisee-class members in a pending class action concerning the subject matter of the action "in connection with contract negotiations requested" by the franchisees. Class representatives feared the discussions would lead to settlements between defendant and the franchisee-class members. Writing for the court, Judge Friendly stated that "[w]hen we compare the order here sought to be appealed with others implicating *Cohen,* the inapplicability of that decision becomes clear." *Id.* at 773.

a resultant irreparable loss of rights.[15] Furthermore, we can find no basis for concluding, as have appellants, that such a decision would not come at a "meaningful time."

█ · We are convinced, as stated above, that the "inconvenience and costs of piecemeal review" of orders similar to the district court's here outweigh "the danger of denying justice by delay." We have been somewhat influenced in this decision by the existence of effective alternate routes for immediate appellate review of such orders in exceptional cases. Specifically, we have considered the availability, in other cases,[16] of certification under 28 U.S.C. § 1292(b) or rule 54(b) of the Federal Rules of Civil Procedure. "Under these provisions the knowledge bred of the district court's proximity to the case can be brought to bear on the question of the propriety of immediate review." *Samuel v. University of Pittsburgh, supra* at 361; *see Hackett v. General Host Corp., supra.* Moreover, review by mandamus may be available in those rare instances where a district court has acted outside the scope of its jurisdiction or arbitrarily and in disregard of appropriate procedural safeguards in approving communications regarding possible settlement of individual claims or in denying a hearing on the matter. *See Rodgers v. United States Steel Corp.,* 508 F.2d 152, 161 (3d Cir.), *cert. denied,* 420 U.S. 969, 95 S.Ct. 1386, 43 L.Ed.2d 649 (1975); *Katz v. Carte Blanche Corp., supra* at 752; *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.,* 455 F.2d 770, 775 (2d Cir. 1972). We have also considered that settlements have been a long favored course for the resolution of litigation and that in employment discrimination cases, they are the "preferred means" for achieving the objectives of Title VII. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). While there may be dangers attendant to such settlements, · where, as here, significant questions remain undecided and review after final judgment is effective to safeguard the rights of class members, immediate appeal under section 1291, and the resultant protraction caused thereby, is singularly inappropriate.

### B. *Section 1292(a)(1).*

Section 1292(a)(1) provides for interlocutory appellate review of orders "granting, continuing, modifying, refusing or dissolving injunctions."[17] Appellants contend that the court's denial of their motion to enjoin preliminarily the tender pending an evidentiary hearing is appealable under 1292(a)(1). Further, they assert that since the court's approval of the tender is "tantamount to an order narrowing the scope of whatever broad relief the remaining class can obtain," it also is appealable under section 1292(a)(1).

█ In essence, appellants' first argument is an effort to convert an order which is not appealable under section 1291 into an appealable order under section 1292(a)(1) by merely labelling their opposition to the order a motion for a preliminary injunction against the very conduct approved by the order. We reject that attempt. It is well settled that the "literal characterization of an order as an injunction only begins the inquiry into appealability." *Stateside Ma-*

---

**15.** Appellants essentially state as much in their reply brief: "If, on appeal of the March 8 order heard only after a final resolution of the merits of the case, this Court concluded that the requirements of Rule 23(e) had not been met, the resulting release would of course be invalid." Reply Brief of Appellants at 9.

**16.** Appellants here did seek certification of the court's order under section 1292(b), but the district court denied the motion to certify. *See* p. 369 *supra.*

**17.** Section 1292(a)(1) provides:

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

28 U.S.C. § 1292(a)(1).

*chinery Co. v. Alperin,* 526 F.2d 480, 482 (3d Cir.1975). An order incidental to a pending action that does not grant all or part of the ultimate injunctive relief sought by the claimant, that is unrelated to the substantive issues in the action and that merely continues the case is not appealable under section 1292(a)(1). *Switzerland Cheese Ass'n v. E. Horne's Market,* 385 U.S. 23, 25, 87 S.Ct. 193, 17 L.Ed.2d 23 (1968); *Rodgers v. United States Steel Corp.,* 508 F.2d 152, 160 (3d Cir.), *cert. denied,* 420 U.S. 969, 95 S.Ct. 1386, 43 L.Ed.2d 649 (1975); *Cromaglass Corp. v. Ferm,* 500 F.2d 601, 608–09 (3d Cir.1974) (en banc); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc. supra* at 774; *International Products Corp. v. Koons,* 325 F.2d 403, 406 (2d Cir.1963); J. Moore & B. Ward, 9 Federal Practice ¶ 110.20[1], at 233 (1975); C. Wright & A. Miller, 11 Federal Practice & Procedure § 2962, at 622–23 (1973). The court's denial of appellants' request for a preliminary injunction was entirely unrelated to the substantive issues raised by this case and the ultimate injunctive relief sought. It simply permitted the tender to be made to certain class members while awaiting trial. While certain orders granting or denying requests for stays are appealable under section 1292(a)(1),[18] the instant order is not "of serious, perhaps irreparable consequence," *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 99 L.Ed. 233 (1955), and accordingly does not fall within that class of orders. *See Stateside Machinery Co. v. Alperin, supra* at 482.

In *Hackett v. General Host Corp., supra* at 622, this court stated that "in those cases in which the refusal to grant class action designation amounts to a denial of a preliminary injunction broader than would be appropriate for individual relief," section 1292(a)(1) is "adequate, we think, to protect against most district court inhospitality to

class action litigation involving civil rights . . . ." Citing *Hackett* and several other cases,[19] appellants contend that the district court's order approving the tender will narrow substantially the scope of injunctive relief ultimately available to class members and thus is appealable under section 1292(a)(1). These cases are inapposite. The *Rodgers* class remains unaffected by the court's mere approval of the tender and consequently the extent of injunctive relief ultimately available has not been narrowed.

### III

For the reasons set forth above, the appeal at No. 76–1297 shall be dismissed for lack of an appealable order.

**18.** *See, e. g., Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942).

**19.** *See, e. g., Jones v. Diamond,* 519 F.2d 1090 (5th Cir.1975); *Price v. Lucky Stores, Inc.,* 501 F.2d 1177 (9th Cir.1974); *Yaffe v. Powers,* 454 F.2d 1362 (1st Cir.1972); *Brunson v. Board of Trustees,* 311 F.2d 107 (4th Cir.1962).