Betty OSWALD, Eileen Miller, Phil Miller and Michael J. Balog, on behalf of themselves and all others similarly situated, Petitioners,

v.

Frank J. McGARR, U. S. District Judge, Northern District of Illinois, Respondent.

An Original Petition for Writ of Mandamus.

In re GENERAL MOTORS CORPORATION ENGINE INTERCHANGE LITIGATION.

Appeal of Betty Oswald, on her behalf and on behalf of all others similarly situated, et al.

Nos. 79–1819, 79–1843.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1979.

Decided April 11, 1980.

Rehearing Denied May 13, 1980.

.William J. Harte, Chicago, Ill., for petitioners.

Donald G. Mulack, Chicago, Ill., for State of Ill.

Thomas A. Gottschalk, Kirkland & Ellis, Chicago, Ill., for GMC.

Before CASTLE, Senior Circuit Judge, and SPRECHER and BAUER, Circuit Judges.

BAUER, Circuit Judge.

The district court approved a notice which detailed an offer of settlement to individual subclass members. Appellants-petitioners appeal from the court's order approving the notice in No. 79–1843 and petition for a writ of mandamus in No. 79–1819 to vacate the order. We dismiss the appeal because the district court's order is neither a final order nor a properly appealable collateral order. We entertain the petition, but deny the writ because petitioners have not demonstrated a clear and undisputable right to mandamus.

### I.

This is part of a consolidated class action brought against defendant General Motors

("GM") on behalf of purchasers of 1977 Oldsmobile automobiles which were equipped with engines and transmissions produced by other divisions of GM. We need not detail the complex history of this litigation, which is narrated in an earlier decision. *In re General Motors Corp. Engine Interchange Litigation* [hereinafter referred to as *GMI*], 594 F.2d 1106 (7th Cir.), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). For purposes of this proceeding, we need only state that in *GMI* we reversed the district court's approval of a settlement for a subclass of Oldsmobile purchasers. In our remand instructions, we permitted GM to communicate an offer of settlement to subclass members on an individual basis if the notice met certain requirements.

GM promptly moved to send out a notice to the subclass, offering the same settlement as that approved by Judge McGarr in his previous decision. Judge McGarr held two days of hearings to review the adequacy of the proposed notice. After several changes were made, Judge McGarr approved the notice on July 5, 1979. It was mailed to subclass members during August, 1979.

Appellants-petitioners challenge the conduct of the proceedings below on several grounds. They claim that it was error for the district court to fail to hold additional hearings as to the value of certain claims and that when all claims are considered, the consideration offered is nominal. They also claim that their rights to free speech were violated when the district court refused to allow their counsel to send a separate communication to subclass members detailing their objections to the offer.

## II.

### A.

At the outset, we must resolve the jurisdictional basis for our decision. Appellants-petitioners filed a notice of appeal from the district court's order of July 5 and also petitioned for a writ of mandamus seeking to vacate the district court's order.

The trial court's order is admittedly not a final order dispositive of the case. It has been offered as a collateral order appealable under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). To come within the "small class" of decisions excepted from the final judgment rule by *Cohen*, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Co.*, 600 F.2d 671 (7th Cir. 1979). The challenged order and the issues on review must be examined to determine if these criteria are met.

The district court order approved a notice offering an individual settlement. The issues on appeal are (1) whether the district judge properly restricted the form and content of the notice, and (2) whether the failure to conduct additional hearings to determine the value of the claims asserted in the action renders the offer "nominal consideration." *GMI*, 594 F.2d at 1140 n.60.

We have already expressed our opinion that appeals from orders concerning communications to class members during the pendency of a class action are not appealable collateral orders. Such orders do not finally settle the merits of the action and do not resolve issues other than the form of notice in the particular case. Any prejudicial error can be corrected on review of the final judgment. *Weit v. Continental Illinois National Bank and Trust Co. of Chicago*, 535 F.2d 1010 (7th Cir. 1976); *Judd v. First Federal Savings and Loan Association*, 599 F.2d 820 (7th Cir. 1979). Other circuits share the same view. *Weight Watchers of Phila., Inc. v. Weight Watchers Int'l., Inc.*, 455 F.2d 770 (2d Cir. 1972); *Clark v. Lomas & Nettleton Financial Corp.*, 581 F.2d 516 (5th Cir. 1978); *Rodgers v. United States Steel Corp.*, 541 F.2d 365 (3d Cir. 1976). *See also, Bernard v. Gulf Oil*

*Co.*, 596 F.2d 1249 (5th Cir. 1979) (reviewing a six-month old district court order restricting communication to class members with review of the final judgment). The objections asserted here are similar to those rejected in the cited cases. No more need be said regarding the first issue. Judge McGarr's order concerning the form and content of the notice is not appealable at this time under the settled law of this circuit.

Review of the second issue would require us to examine the district court's actions involving the determination of the value of the claims asserted and the amount of consideration offered in settlement of the claims. First, since the offer does not bind all subclass members, the judge's appraisal of the value of the claims, which underlies his finding that the offer was not nominal, is not final in any legal sense. Judge McGarr's order does not finally determine anyone's rights. Review at this time would not therefore "conclusively determine the disputed question," the first criteria for a collateral order. In a case almost entirely on all fours, the Third Circuit rejected an interlocutory appeal from an order permitting communication of an individual settlement offer on this ground. *Rodgers v. United States Steel Corp.*, 541 F.2d 365 (3d Cir. 1976). In *GMI* we said the order in *Rodgers* "merely approved the communication of the offer; it did not finally determine the rights of any member of the class." *GMI*, 594 F.2d at 1120 n.16.[1] *Compare Swanson v. American Consumer Industries, Inc.*, 517 F.2d 555 (7th Cir. 1975) (reviewing an attorney's fees award as a collateral order).

The second criteria, that the order resolve an issue completely separate from the merits of the action, is also not met. The

determination of the value of the claims is the very heart of the litigation, and will be at issue again if another binding settlement is proposed or if a determination of damages is required after trial.

The third criteria is not met because the rights asserted in the appeal will be reviewable on appeal from final judgment. Even though the individuals who accept the offer may waive their rights, the class will remain viable and the litigation will continue. *But see Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979) (acceptors of individual back pay tender do not waive rights to appeal); *cf. Deposit Guaranty National Bank v. Roper*, —— U.S. ——, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Any challenge to the effectiveness of the offer and release will have to be resolved at some other time, since the enforceability of the release is not an issue in this litigation. As stated in *Rodgers*:

> [T]o the extent the court's approval of specific language in the notice and release forms, or the amount offered . . . impacts on the voluntariness of the execution of a release by a particular class member or on the enforceability of the release by appellees, that approval can be effectively reviewed at final judgment with no attendant loss of rights.

541 F.2d at 371.

GM's rights will also be unaffected if review is delayed. We argued for immediate review of the first *GM* order because GM might not have been able to recoup the benefits rendered under the insurance policy offered in the settlement. It is now too late to justify review of the individual offers on that ground. The individual offers

---

1. In *GMI* we reviewed Judge McGarr's order approving a settlement that would have bound the entire subclass. For all intents and purposes, the first *GM* order was a final order; it would have ended the litigation as to an entire subclass of Oldsmobile purchasers. An appeal from a settlement of a class action is entirely proper. *See, e. g., Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). We relied on the collateral order doctrine only because the original class was divided into two subclasses. That procedure arguably made the case a multi-party action subject to the requirements of Fed.R.Civ.P. 54(b). Since the district court had not made the determination required by that rule that there was no just reason for delay and to direct entry of judgment, we based our review on the collateral order doctrine.

to settle have been out since August 1979. In the past six months, thousands of subclass members have accepted and presumably received benefits under the insurance policy. The consequences of reversing now (were we so inclined) would be no different than if we reversed after final judgment.

Our overall concern in determining whether an order is appealable is whether the danger of denying justice by delay outweighs the dangers of piecemeal review. *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). Here, no rights will be lost by delaying review, but justice in a final sense will certainly be delayed if interim orders like this one are reviewable.

> The questions decided against the plaintiffs will not conclusively settle any issue other than the propriety of the notice in this particular case under the facts here involved. If review were to be granted on this appeal, we see no reason why almost every order specifying the form and content of notice in a class action would not be appealable.

*Weit v. Continental Illinois National Bank & Trust Co. of Chicago*, 535 F.2d at 1015. *Accord, Rodgers v. United States Steel Corp.*, 541 F.2d at 371–72. Delay in the management of class suits would be the inevitable result. Since the order sought to be reviewed does not satisfy the *Cohen* criteria, we conclude that the district court's order is not appealable. We accordingly dismiss the appeal.

### B.

 Petitioners also seek a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a). Mandamus is an extraordinary remedy, and will lie only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so. *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). Mere error is not sufficient to invoke the mandamus process; the petition must assert an action of the lower court by which it acted beyond its power. *Id.*

 Petitioners assert that the district court's actions violated various constitutional provisions. While some courts have used mandamus as a vehicle for correcting grievous constitutional violations, *see Rodgers v. United States Steel Corp.*, 536 F.2d 1001 (3d Cir. 1976), the circumstances here do not warrant such an approach. First, the mere assertion of a constitutional violation is not sufficient to warrant a writ of mandamus. The error must be one that cannot be adequately corrected by the normal appeals process. *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). The first amendment violations alleged in *Rodgers* were amenable to correction by a writ of mandamus only because the court's order, which prohibited class counsel from disclosing certain information received from sources outside the discovery process, was so broad as to constitute a prior restraint. No such restraint was imposed here. The district court permitted both sides to communicate with the class, but restricted the form of the communication. The court did prohibit counsel from including a separate statement in the offer itself, but did so because it preferred that counsel agree on a joint communication to prevent confusion. Given that we have upheld this type of restriction before, *see, e. g., Weit v. Continental Illinois National Bank & Trust Co. of Chicago*, and that any abuse of discretion may be corrected after final judgment, Part A *supra*, we will not entertain a petition for a writ of mandamus to review petitioners' constitutional claims.

 Petitioners' other basis for entertaining the petition is more persuasive. Petitioners argue that mandamus is appropriate to review compliance with the remand instructions of *GMI*. A court of appeals has the power to enforce its mandate and mandamus is an appropriate remedy to enforce a previous judgment of an appellate court. *Bucolo v. Adkins*, 424 U.S. 641, 96 S.Ct. 1086, 47 L.Ed.2d 301 (1976) (per curiam); *Deen v. Hickman*, 358 U.S. 57, 79 S.Ct. 1, 3 L.Ed.2d 28 (1968) (per curiam); *Estate of Whitlock v. Commissioner*, 547 F.2d 506 (10th Cir. 1976), *cert. denied*, 430 U.S. 916,

97 S.Ct. 1329, 51 L.Ed.2d 594 (1977). Mandamus will lie to "confine a lower court to the terms of an appellate tribunal's mandate." *Will v. United States,* 389 U.S. at 95–96, 88 S.Ct. at 273–74. *See also United States v. E. I. DuPont deNemours & Co.,* 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961); *United States v. Haley,* 371 U.S. 18, 83 S.Ct. 11, 9 L.Ed.2d 1 (1962); *Baltimore & O. R. Co. v. United States,* 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954 (1929); *United States v. United States District Court,* 334 U.S. 258, 68 S.Ct. 1035, 92 L.Ed. 1351 (1948). As we said in *Independent Nail & Packing Co. v. Perry,* 214 F.2d 670, 673 (7th Cir. 1954),

> courts have not hesitated to issue writs of mandamus when it appeared to be necessary to enforce the judgment of the appellate court [citation omitted]. Where a lower court has failed to comply with a mandate of a reviewing court, compliance with such mandate may be compelled by writ of mandamus.

 Mandamus is appropriate to review compliance with discretionary standards and nondiscretionary commands set forth in an earlier opinion concerning the parties. In *City of Cleveland, Ohio v. Federal Power Commission,* 561 F.2d 344 (D.C.Cir.1977), a previous mandate of the court directed further proceedings by the Commission. The parties later disputed what the scope of the Commission's proceedings was to be. The court treated its review of the Commission's actions as "relief in the nature of mandamus." *Id.* at 348 n.43 (petitioner sought an "order directing compliance with the mandate"). The court stated that the scope of its review was determined by its previous decision, explaining "[t]he decision of a federal appellate court establishes the law binding further action in the litigation." *Id.* at 346. The court noted that this was "a specific application of the doctrine commonly known as the law of the case." *Id.* at 348. Similarly, in *Yablonski v. United Mine Workers of America,* 454 F.2d 1036 (D.C. Cir.1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972), the court reviewed under mandamus (although it did not formally issue a writ) an order applying

its previously enunciated standards for the disqualification of counsel. The court stated that mandamus "may be appropriately utilized to correct a misconception of the scope and effect of [an] appellate decision." *Id.* at 1038.

> A trial court "is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of [the] court deciding the case," and it is well settled that mandamus lies to rectify a deviation.

*Id.* [footnote omitted].

 We have the authority under the All Writs Act to review the actions of the district court to determine whether it has complied with our mandate. That does not, however, mean that a writ of mandamus necessarily must issue.

> To say that a court of appeals has the power to direct a district court to [comply with its previous mandate] "when it is its duty to do so," 319 U.S., at 26, 63 S.Ct., at 941, states the standard but does not decide this or any other particular case. It is essential that the moving party satisfy "the burden of showing that its right to issuance of the writ is 'clear and undisputable.'" [citations omitted].

*Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 662, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978). Since the petitioner must satisfy a high burden, the court's scope of review on consideration of a petition for a writ of mandamus is necessarily restricted. We will not review Judge McGarr's actions *de novo,* but will only compare his rulings with our instructions in *GMI.* Even the possibility of error will not justify granting the writ. A writ will issue only if Judge McGarr violated a nondiscretionary command or so abused his discretion that he can be said to have disregarded our mandate. Only then will petitioners have shown a clear and undisputable right to a writ of mandamus.

### III.

As we have said, the remand instructions in *GMI* set the framework of our inquiry.

The *GMI* decision set down standards by which the trial court was to review the proposed notice for individual settlement. Since the proposed offer would not bind the entire class, the standards developed under Rule 23(e) of the Federal Rules of Civil Procedure did not apply. *GMI*, 594 F.2d at 1138. We nonetheless felt compelled to promulgate some guidelines so as to insure the fairness of the procedure. We indicated that the notice should contain a balanced and complete presentation of information to help individual class members make an informed decision. We said, however, that "a lesser degree of judicial scrutiny" was required than would be if the offer was to bind the entire class. *Id.* at 1139. "[J]udicial examination of the offer to settle individual claims," we said, "largely entails only consideration of the accuracy and completeness of the disclosure." *Id.* at 1140.

■ More specifically, we stated that the notice should contain "sufficient information to enable a class member to determine (1) whether to accept the offer to settle, (2) the effects of settling, and (3) the available avenues for pursuing his claim if he does not settle." *Id.* at 1139. We expressly held that the district court need not reexamine the amount tendered in settlement to determine whether it was fair, reasonable and adequate. Rather, so long as the consideration was not "nominal," we held that the court need only review the disclosures contained in the notice and find that the offer provided a class member with a *"meaningful* opportunity to obtain satisfaction of his claim." *Id.* at 1140 n.60. We left to the district court's discretion whether to allow a statement by plaintiffs-objectors of their opinion of the adequacy of the settlement. *Id.* at 1140. Our overall concern was that the offer to settle be a balanced, accurate and complete disclosure. Much was left to the trial court's discretion. A review of the notice and the proceedings below reveals that Judge McGarr complied with our directive.

The Notice of Offer to Settle Claims is divided into eight sections, each about a page long. The first section contains a summary of the notice's contents and a disclaimer that the offer does not constitute any opinion or finding by the court, in accordance with a specific order by us to that effect. *Id.* at 1140. The second section describes the GM litigation and details the allegations of the plaintiffs' complaints and GM's response. The third section contains the terms of the offer to settle and the release. The next section instructs how to accept the offer, followed by a long section detailing the effects of accepting or not accepting the offer. Two more pages of additional background information concerning attorney's fees, objectors' concerns, and a reiteration of the neutrality of the court follow. Finally, the separate views of those plaintiffs who oppose and approve the settlement are stated briefly.

Petitioners claim the trial judge's failure to hold a hearing regarding the value of all the claims asserted and his refusal to reconsider the amount of consideration offered in settlement violated the mandate of this court. They also argue that the judge abused his discretion in not including a specific monetary amount for the value of the claims in the notice.

■ Petitioners' objections to the proceedings below are thinly-disguised attacks on the reasonableness of the monetary offer. As such they ask us to go beyond the level of review contemplated by *GMI*. Although we expressed some reservations about the adequacy of the offer as a settlement for the entire subclass, we did not require the district court to find that the amount as an offer to individuals was " 'fair, reasonable, or adequate.' " 594 F.2d at 1140 n.60. The district court correctly stated that

the problem [the Seventh Circuit] found . . . was not on the basis of a determination of the reasonableness of the settlement . . . .. I think the Seventh Circuit has very clearly told me that while they had very great difficulties with the settlement as a mandatory settlement, if it were optional to the parties they think it would be fine.

The individual offer contemplated by our decision did not require the judge to "assess . . . the issues of law which weigh heavily in the [calculus of determining fairness] and to consider the most probative evidence bearing on those issues." 594 F.2d at 1132 n.44. The district court was under no compulsion to hold a hearing related to the value of the claims or the adequacy of the offer so long as the consideration was not "nominal." *Id.* at 1140 n.60.

Petitioners seek to get around this limitation by labeling the proposed offer "nominal" on the asserted grounds that the judge held no hearings regarding the value of the transmission claims. An offer tendered to settle claims about which there have been no hearings must be nominal, according to petitioners. We do not agree. The court based its appraisal of the amount tendered in settlement on its previous finding that the amount offered was fair. Since our decision required only that the consideration not be nominal, the trial judge certainly did not abuse his discretion in concluding that the consideration he thought completely fair was not nominal.

The inclusion of the transmission claim in the release does not change the outcome. First, it is entirely proper for the offer to include a release for claims not yet adjudicated. A settlement offer is a compromise and may include a release of claims not before the court. Second, the district judge, recognizing that we required only very limited review of the amount of the offer, focused instead on the adequacy of the disclosures concerning the transmission claim. The court was concerned that class members might be confused because the release covered more than the engine interchange claims. The court stated:

> That aspect of it troubles me. The cure to that I suppose would be if the form of notice adequately explained and differentiated between the fact that the engine aspect of the case . . . [is] the issue before this court, [and] is the issue concerning which the fairness of the settlement hearing was concentrated on and the issue concerning which basically the

settlement offer is being sent out. But you should note, and if it adequately says this I would be satisfied with it, that in the release you were releasing your claims and withdrew the drive train [claim] as well which was not an issue in this case.

In response to the court's concern that the average person reading the offer should be able to understand the scope of the release, the notice was changed to contain several references to the transmission claim. Class members are informed of the claim in the first section of the notice, which describes the claim and also states that the drive train allegations have not been adjudicated, but would be waived by the release. Class members are again notified of the transmission claim in the release. The description of the release is underlined and states plainly that it *"covers claims which are not pending before the Court in this litigation* . . . [including] a claim for substitution of any other power train components." (Emphasis supplied.) The breadth of the release is reiterated again and again. Class members are told "[t]he Release will permanently and forever bar you . . . from any future or further recovery for claims being asserted in this litigation, and your claims will be dismissed with prejudice. . . ." The member is told twice more that the release covers the transmission claim, and, we note, is also told twice that the release does *not* bar claims "arising out of any defects in the design, material, or workmanship of any kind in the transmission installed in your automobile." The release also names any litigation pending in the member's state and states that the release covers claims in that litigation as well. The notice fairly informs class members about the transmission claim, and thus satisfies our mandate that class members have sufficient information to determine the effect of settling their claims. No additional hearings were required.

Petitioners' next objection to the adequacy of the notice is the refusal of the district court to permit petitioners to place a dollar value on the claims released by the

settlement. Petitioners claim that class members cannot make a rational decision without a dollar figure for the amount of the released claims.

The figures suggested by petitioners for the value of the claims are hotly contested.[2] In addition, any figure placed on the value of claims must be discounted to its present value to reflect the probability that any recovery will not occur until after several years of litigation. This class action is already over two years old. The true monetary worth of the claims may thus be substantially less than even conservative estimates given the protracted nature of the litigation.

The trial court rejected the suggestion for inclusion because he didn't

> think that the statement of counsel that if pursued to a successful conclusion this litigation might produce $10,000 or whatever that figure is . . . should be in there. . . . [I]f you put a figure on it I think you are pulling one out of the hat with no basis . . . in evidence for what it might be. . . .
>
> \* \* \* \* \* \*
>
> I am not going to allow the notice to contain boxcar figures which will raise false hopes in the individual.

Instead, the court approved insertion of language that plaintiffs-objectors "believe that, if you reject the offer, you may recover an amount substantially higher than the amount of money offered to you." The judge's action was perfectly in accordance with our directive that the district court should prevent the "possible misleading of class members about the strength and extent of their claims and the alternatives for obtaining satisfaction of those claims." 594 F.2d at 1139. There was no abuse of discretion or disregard of our mandate.

■ Next, petitioners object to the refusal of the trial court to allow their coun-

sel to send a separate letter to class members explaining their objections to and evaluation of the settlement offer. This contention is simply answered. In our previous decision, we expressly left to the trial court's discretion whether "the offer to settle should contain a statement by the plaintiffs-objectors of their opinion of the adequacy of the settlement package in order to make the communication a full and complete disclosure." _Id._ at 1140.

The district court maintains power, under Local Rule 23 of the Northern District of Illinois, to control communications to class members. Counsel for the plaintiffs moved for permission to send class members a separate communication expressing their views on the settlement offer. The district court denied their request, opting instead to permit objectors to state their views in the notice. The court's objective was to prevent a "war of letters" between proponents and opponents of the settlement. As approved by the district court, objections to the settlement are reflected in a separately titled paragraph near the end of the notice entitled "Separate Views of Plaintiffs Who Object to this Settlement." The notice also includes the name, address and phone number of plaintiffs' counsel for inquiries.

Petitioners object to the placing of their statements and protest that their views are presented in only a few paragraphs of a fourteen page document. But the great balance of the notice is a neutral disclosure of the history of the litigation and offer itself. Statements of petitioners are immediately followed by those of the parties who approve the settlement. Since we specifically left the determination of the issue to the district court's discretion, we see no abuse in the judge's decision to consolidate communications to class members in one notice. We also think the notice adequately and fairly reflects the concerns in support of and in opposition to the settlement of all

---

**2.** Plaintiffs base a large portion of their figures on one case in Louisiana in which one owner received about $8,000 in damages reflecting the purchase price of his car plus attorney's fees less a credit for use. _Gour v. Daray Motor Co., Inc. and General Motors Corp.,_ 373 So.2d 571

(La.App.1979), _cert. dismissed,_ 377 So.2d 1033 (La.1979). The Attorney General of Illinois filed a brief in this court contesting plaintiffs' figures and arguing that the consideration offered here is perfectly fair. We, of course, express no opinion on the matter.

the parties. In all, the trial judge complied with the mandate of *GMI*.

## IV.

Now that we have finished our extensive review of the district court's actions, we must again caution that this is not the usual procedure that will be permitted in class actions. Under most circumstances, a notice mailed to class members in the course of a class action is not reviewable under any standard. Our review was proper and necessitated solely because of our obligation to ensure compliance with our previous mandate. Judge McGarr complied fully and capably with that mandate. Petitioners have not demonstrated a clear and undisputable right to a writ of mandamus. We accordingly deny the writ for mandamus. Writ denied, appeal dismissed.