Hayes **WILLIAMS**, et al.,
**Plaintiffs–Appellees,**

v.

John J. **McKEITHEN**, et al.,
**Defendants,**

**William Belt, Sheriff of Avoyelles Parish, et al., Movants–Appellants.**

**No. 90–3500.**

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1991.

---

Wm. Bradford Reynolds, Ross & Hardies, Washington, D.C., John Baker, Baton Rouge, La., A.J. Roy, Jr., Marksville, La., for Belt.

Lutz A. Prager, Asst. Deputy, Herbert O. Reid, Sr., Office of Corp. Counsel, Washington, D.C., for District of Columbia.

T. Allen Usry, Usry & Weeks, Freeman R. Matthews, Metairie, La., for Acadia Sheriff, et al.

Luke Fontana, New Orleans, La., for Hayes Williams, et al.

Keith B. Nordyke, Nordyke & Denlinger, Baton Rouge, La., (court-appointed), Robert Kendall, Jr., Asst. Director, Office of Immigration Litigation, Civil Div., Justice Dept., Linda S. Wendtland, Atty., Washington, D.C., for inmates.

Before WISDOM, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

On June 25, 1990, the United States District Court for the Middle District of Louisiana issued a preliminary injunction generally directing Sheriff William Belt (Belt) of Avoyelles Parish, Louisiana, all other Louisiana sheriffs, and the District of Columbia (the District) to ensure that all prisoners held in Louisiana parish jails pursuant to agreements with the District be removed from all such jails by July 15, 1990.[1] Belt, thirty-five other Louisiana sheriffs (appellants-sheriffs) and the District appeal the district court's issuance of the preliminary injunction on grounds that the injunction

---

1. The injunction directed Belt and all other Louisiana sheriffs not to accept prisoners from the District or from the Immigration and Naturalization Service (INS) and to remove District prisoners currently housed by the sheriffs in Louisiana parish jails. The district court excepted from the effect of the injunction INS prisoners who had been arrested for committing a crime in Louisiana and prisoners received from the Federal Bureau of Prisons or the United States Marshals. The court also enjoined the District from sending its prisoners to Louisiana.

was issued without providing notice to all adversary parties and that the district court lacked authority to issue the injunction. We do not find it necessary to address additional issues raised on appeal,[2] for we hold that the issuance of the injunction was wholly groundless and that it must therefore be vacated.

### Facts and Proceedings Below

This case finds its origin in a 42 U.S.C. §§ 1981, 1983 suit filed in 1971 by four inmates at the Angola, Louisiana state penitentiary alleging, *inter alia*, that the conditions of their confinement violated the Eighth and Fourteenth Amendments.[3] The inmates prevailed at trial and the district court imposed a limit on the prison population of the Louisiana state penitentiary at Angola. This Court approved the district court's judgment in *Williams v. Edwards*, 547 F.2d 1206, 1219 (5th Cir.1977).

Although at that early stage the litigation had not yet addressed conditions at parish jails, this Court in *Williams* specifically directed that the district court, on remand, address the problem of overcrowding at certain parish jails, with respect to which appeals were pending. The volume of prison and jail overcrowding claims ultimately necessitated issuance of a writ of mandamus ordering that all pending and future actions before a United States District Court in this circuit seeking alleviation of crowded conditions in a Louisiana state penitentiary, or in any jail operated by a political subdivision of the state of Louisiana which is or maybe directly or indirectly affected by a district order limiting inmate population, be consolidated in the United States District Court for the Middle District of Louisiana. *Hamilton v. Morial*, 644 F.2d 351, 354 (5th Cir.1981).[4] This Court allowed any portions of such actions not dealing with or affected by limitations on inmate population to be transferred back to the district court from which it was transferred. *Id.* The district court accordingly issued an order transferring all cases transferred to it pursuant to *Hamilton* back to the district court from which they were transferred.

The district court where the overcrowding claims were consolidated, the same district court that ordered the preliminary injunction in the instant case, subsequently sought to obtain a commitment from all Louisiana prisons and parish jails to adhere to specified population limits. This effort led, in September 1982, to a series of separate stipulations and consent decrees specifying the maximum number of inmates that could be housed in jails in each of Louisiana's sixty-four parishes.[5]

Many of the sheriffs of parishes which were parties to the stipulations and consent decrees had never previously been parties against whom claims of unconstitutional overcrowding had been instituted; the agreements by these sheriffs to assist the district court's remedial efforts in specifying population limits was entirely voluntary. Belt, for example, sheriff of Avoyelles Parish, was not a party to *Williams* (or *Hamilton*) or any subsequent consolidated proceeding, but he did agree to adhere to the limits provided for in the separate consent decree applicable to his parish.

**2.** Belt, appellants-sheriffs, and the District variously challenge the district court's order joining all Louisiana sheriffs as indispensable parties pursuant to Rule 19(a) of the Federal Rules of Civil Procedure; the district court's order pursuant to the June 25 injunction that sheriffs requesting a hearing on the issue of housing of District and INS prisoners pay attorneys' fees in accordance with 42 U.S.C. § 1988; the district court's denial of a motion to vacate the preliminary injunction of May 25, 1990, which was superseded by the June 25 injunction; the substance of the district court's preliminary injunction as exceeding its jurisdiction as an improper invasion of the province of prison administra-

tion; and the movant's carrying of its burden of proof with respect to the legal prerequisites to the issuance of a preliminary injunction.

**3.** The United States intervened in that suit.

**4.** *Hamilton* arose out of a suit filed by prisoners confined at a Louisiana parish facility. The suit challenged the legality of overcrowding and other conditions of confinement at the facility.

**5.** The stipulations and consent decrees also specified the minimum number of guards required.

The problem of prison and parish jail overcrowding in Louisiana has apparently continued. The most recent attempt to solve the problem was a long-term prison improvement plan submitted by Louisiana's Governor Roemer to the district court and the Louisiana legislature on April 10, 1990.[6] On May 8, before the legislature could approve the Governor's plan, Belt entered into a contract with the District to house District prisoners. Prior to May 8, Belt and sheriffs from some other parishes had entered into contracts with the District and the Immigration and Naturalization Service (INS) to house District and INS prisoners. The district court had not previously objected to ongoing District and INS contracts with Louisiana parishes, some of which date back to 1986.

The district court responded to news of the May 8 contract by *sua sponte* issuance of an order requiring Belt to show cause why he should not be enjoined from housing District and INS prisoners. The court required service upon Belt, the U.S. Attorney for the Middle District of Louisiana, the attorney general of Louisiana, the Louisiana secretary of corrections and Governor Roemer for a hearing on May 25. Belt testified on his own behalf at the hearing.

At the conclusion of the hearing, the district court issued a preliminary injunction, under authority of the All Writs Act, 28 U.S.C. § 1651, directing Belt and all other Louisiana sheriffs to remove from their custody all prisoners held by them pursuant to agreements with the District by June 25.[7] The district court further enjoined Belt and all other Louisiana sheriffs from accepting any additional inmates from INS without the court's prior approval. No sheriff other than Belt had been ordered to show cause or had been given notice of the May 25 hearing. Nor was any sheriff other than Belt present at the hearing. After issuing the injunction, the court ordered service upon each Louisiana sheriff and upon various government officials, but it gave no notice to the District.

Fifty-three Louisiana sheriffs, including appellants-sheriffs, and Belt filed separate motions to vacate the preliminary injunction, the fifty-three sheriffs claiming that the May 25 injunction was issued without prior notice to them, thereby violating Rule 65(a) of the Federal Rules of Civil Procedure and the Due Process Clause under the Fourteenth Amendment. On June 25, following argument on the motions to vacate the initial preliminary injunction, the district court denied the motions and issued a second preliminary injunction that substituted for its May 25 predecessor.

The June 25 injunction again required removal of all District prisoners housed in Louisiana parish jails and further enjoined all Louisiana parish jails from receiving District or INS prisoners[8] without the court's permission. The District was specifically enjoined from sending its prisoners to Louisiana parish jails. The court also ordered that Louisiana sheriffs be fined $10,000 per day per District or INS prisoner housed in violation of the injunction.[9] Belt, appellants-sheriffs and the District appeal from the June 25 injunction and the court's denial of the motions to vacate.[10]

### Discussion

Belt, appellants-sheriffs and the District argue, *inter alia*, that the district court failed to give notice to the parties opposed to the preliminary injunction and that the court exceeded its authority by issuance of

---

**6.** All dates hereinafter are in 1990, unless otherwise noted.

**7.** On June 22, the district court modified the May 25 injunction to extend its deadline for the removal of District prisoners to July 15.

**8.** Prisoners from INS who were arrested for committing a crime in Louisiana were excepted from injunction's purview.

**9.** The fines were to be borne personally by the sheriffs.

**10.** Belt has obtained a stay of the June 25 injunction from this Court. The stay permits Belt to house the same number of District and INS prisoners as were being housed on June 25. The district court subsequently adopted this Court's stay pursuant to motion by the appellants-sheriffs.

the injunction.[11]  Appellee [12] claims that under the All Writs Act the district court was authorized to issue the injunction in order to effectuate its jurisdiction under *Hamilton*.  Appellee also claims that the district court was authorized to issue the injunction because Belt, appellants-sheriffs, and the District were indispensable parties under Rule 19(a) of the Federal Rules of Civil Procedure.  Finally, appellee claims that the injunction was necessary to prevent irreparable injury to Louisiana inmates housed in unconstitutionally overcrowded state prisons.

■ Appellee observes that federal courts have the authority "to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977).  The Supreme Court has also stated that "[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice."  *Id.* 98 S.Ct. at 373 (citations omitted).

■ However, in *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 3155, 73 L.Ed.2d 835 (1982), the Supreme Court distinguished *New York Telephone Co.*, noting the truly minimal and unobtrusive nature of the challenged order there, viz:

> "In *New York Telephone*, we held that the All Writs Act was available to require a third party to assist in the carrying out of a District Court order pertaining to the installation of pen registers, and in doing so we noted that '[t]he order provided that the Company be fully reimbursed at prevailing rates, and compli-

ance with it required minimal effort on the part of the Company and no disruption to its operations.'  *Id.*, at 175, 98 S.Ct., at 373."

The present orders are not remotely comparable: what they require is substantial, uncompensated change in appellants' existing operations.  Moreover, the present orders are not shown to have the same close nexus to an underlying order as was the case in *New York Telephone Co.*, for here there is no finding or evidence that Belt or the appellants-sheriffs had refused or been unable to receive any state penitentiary prisoners whom the district court had ordered transferred, or, indeed, any state prisoner whatever (or had violated the consent decrees applicable to their parishes).  The All Writs Act generally creates no authority to enjoin those who "could not properly be held liable to any sort of injunctive relief based on their own conduct."  *General Bldg. Contractors*, 102 S.Ct. at 3156.  *See also Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069 (1974) (holding that remedy imposed on parties "not shown to have committed any constitutional violation" was "wholly impermissible").

This Court has similarly noted that the "extraordinary power conferred by the All Writs Act ... is firmly circumscribed, its scope depending on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power."  *ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1358–59 (5th Cir.1978).  For example, "conduct not shown to be detrimental to the court's jurisdiction or exercise thereof [cannot be] enjoined under the [All Writs] Act."  *Id.* at 1359 (citation omitted).  The authority of the All Writs Act cannot support an order—in *Barton*, a district court's decision to issue a turn-over order entered during garnishment proceedings—that is not "directed at conduct which, left unchecked, would have had the practical ef-

---

**11.** For appellants' various alternative claims, see note 2, *supra.*

**12.** The appellees' brief in this case was filed by the attorney appointed by the district court to

represent Louisiana parish prisoners in hearings granted to Louisiana sheriffs on the issue of the housing of District and INS prisoners in Louisiana parish jails.

fect of diminishing the court's power to bring the litigation to a natural conclusion." *Id.* (footnote omitted). The mere " 'fact that a party may be better able to effectuate its rights or duties if a writ is issued never has been, and under the language of the [All Writs Act] cannot be, a sufficient basis for issuance of the writ.' " *Id.* at 1360 (quoting *New York Telephone Co.*, 98 S.Ct. at 381).

Here, no case or controversy was before the district court. The court did not find that any Louisiana sheriff had committed any constitutional violation. There was no finding that any parish jail was housing inmates in excess of population limits imposed by the consent decrees or was otherwise in violation thereof. There was also no finding that any parish jail was not accepting or was unable to accept Louisiana state prisoners. Not only were there no legally sufficient findings or reasons for the injunction, *see* Fed.R.Civ.P. 65(d), but none of the foregoing matters were established by any evidence. While it may be arguably conceivable that the district court's actions might be necessary in order for it to exercise its authority pursuant to orders entered under *Hamilton* (a matter the legal significance of which we do not determine), this Court cannot assume such necessity where its underlying logic remains entirely unproven and unarticulated.[13]

■ Even assuming that issuance of the injunction was properly within the district court's authority, the notice requirements of Rule 65(a) of the Federal Rules of Civil Procedure nevertheless remain operative. Rule 65(a) states that "[n]o preliminary injunction shall be issued without notice to the adverse party." This notice require-

ment, with few exceptions, implies "a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda*, 415 U.S. 423, 94 S.Ct. 1113, 1121 n. 7, 39 L.Ed.2d 435 (1974); *see Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 131 (5th Cir.1990). The Supreme Court has noted the fundamental nature of the right to be heard:

> "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' " *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (citations omitted).

The district court made no attempt to provide an adequate hearing to parties affected by its actions. There is no evidence that the District was notified of the June 25 hearing, yet the injunction issued following that hearing specifically enjoined the District from sending its prisoners to Louisiana. There is no evidence that appellants-sheriffs were on notice that the June 25 hearing was held for any purpose other than to rule on the motion to vacate the May 25 injunction; they were therefore unprepared and not on notice to oppose the June 25 preliminary injunction issued at that hearing.[14]

### Conclusion

The preliminary injunction is not supported either by any legally adequate rea-

---

**13.** Nowhere does the district court directly address claims that the housing of District and INS prisoners had actually resulted in an *increase* in the amount of prison housing available to Louisiana state prisoners. The record suggests that the district court was concerned about the possible future impact that the housing of District and INS prisoners might have on the ability of Louisiana parishes to handle the overflow of prisoners from Louisiana state prisons. Speculation, however, cannot form the legal basis of a remedial order. *See Gladden v.*

*Roach*, 864 F.2d 1196, 1198 (5th Cir.), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989).

**14.** The appellants-sheriffs also had no notice of the May 25 hearing. Furthermore, the June 25 injunction was directed at all Louisiana sheriffs, some of whom were not present at the June 25 hearing and therefore had received notice of neither the May 25 hearing nor the June 25 hearing.

sons or by any record evidence. Moreover, it was issued without appropriate notice and hearing. For these reasons, we hereby vacate the temporary injunction and reverse the order entering it.

REVERSED.