**PETER ANDERSON, Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS d/b/a VIRGIN ISLANDS POLICE DEPARTMENT, RAMON DAVILA, KENNETH MAPP, ROBERT SOTO, and ELTON LEWIS, Defendants**

Civ. No. 1996-118

District Court of the Virgin Islands

Div. of St. Croix

November 27, 1996

LEE J. ROHN, ESQ., *for Plaintiff.*

ERNEST F. BATENGA, ESQ., *for Defendants*

KERRY E. DRUE, ESQ., *for Defendants*

CARL J. HARTMANN, III, ESQ., *for Defendant Kenneth Mapp*

TRESTON E. MOORE, ESQ., *for Defendant Ramon Davila*

MOORE, *Chief Judge*

## MEMORANDUM OPINION

Defendants have applied for a stay[1] of the Court's order of October 16, 1996, granting plaintiff's request for a permanent injunction. Since defendants have failed to establish that the factual findings made at the hearing were incorrect, or that the defendants will suffer irreparable harm from the injunction, the Court finds that a stay pending appeal is not warranted. Additionally, a review of the existing case law convinces the Court that the order granting injunctive relief is not an appealable order, which makes it very

---

[1] The motion was submitted by Attorney Kerry Drue, who is an attorney of record for all defendants. A Notice of Filing Original Exhibits was filed by Attorney Ernest Batenga, who is also an attorney of record for all defendants. The motion will be treated as if it was filed on behalf of all defendants since the attorneys who filed it represent all defendants, although there is no indication that Attorney Treston Moore, who serves as co-counsel for Ramon Davila, and Attorney Carl Hartmann, III, who is co-counsel for Kenneth Mapp, had any role in the filing of this motion.

likely that the appeal will not succeed on the merits. For these reasons, the defendants' motion will be denied.

## I. Facts

At some time before December 28, 1995, the NSF initiated an investigation of a known drug area in the de Chabert housing project. Over two days, December 28-29, 1995, the NSF placed this area under videotape surveillance, during which one Curtis Jacobs, a/k/a "Isis," was observed driving into the scene in a red Jeep Cherokee, getting out and meeting with known drug figures, appearing to puff on a marijuana cigarette, drive off, and return later. Subsequent to and based on the video surveillance, numerous arrests were made, although Curtis Jacobs was not among those arrested.

The NSF agents suspected that Curtis Jacobs may have been engaged in drug trafficking, and sought to determine who was supplying him with drugs. He was known to the agents as having been convicted in St. Croix in 1993 of possession of cocaine with intent to distribute. (Pl. Ex. 23.) Toward that end, the agents attempted to find who owned the red Jeep Cherokee Jacobs was seen driving during the video-taped surveillance. Although they knew by late January 1996 that the Jeep belonged to Lee J. Rohn, little evidence was offered of any immediate follow up on this information.

On or about January 22, 1996, Captain Peter Anderson filed a complaint with the Equal Employment Opportunity Commission ["Soto"] and the Civil Rights Division of the Virgin Islands. Anderson named Commissioner Ramon Davila as the defendant in a racial and national origin employment discrimination lawsuit. On January 31, 1996, Anderson retired from the Virgin Islands Police Department.

On February 22, 1996, the *St. Croix Avis* published a story which stated that Anderson was filing an employment discrimination lawsuit against the Government of the Virgin Islands and Ramon Davila for various claims related to employment discrimination. The *Avis* also reported that Attorney Lee Rohn would be representing Anderson.

On September 6, 1996, Attorney Rohn filed the complaint in this action on behalf of plaintiff Peter Anderson. On September 11,

1996, Rohn filed an amended complaint. Rohn filed a motion for a temporary restraining order and preliminary injunction on September 19, 1996. On Friday, September 27, 1996, Magistrate Judge Geoffrey Barnard telephoned the Attorney General's St. Croix Office and gave oral notice that a hearing on plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction was scheduled for Wednesday, October 2, 1996. On September 30, 1996, plaintiff issued various subpoena duces tecum commanding the recipients to bring various documents to the October 2 hearing. On October 1, 1996, defendants filed a motion to disqualify plaintiff's attorney, a motion to quash subpoenas issued by plaintiff, and a motion to strike exhibits submitted by plaintiff, as well as a notice of intent to file a written response to plaintiff's motion for a temporary restraining order.

At the hearing commencing on October 2, the Court denied defendants' motion to disqualify Attorney Rohn. The Court denied defendants' motion to strike each allegation in the complaint referring to Attorney Rohn, as well as defendants request to strike the exhibits submitted by plaintiff. The Court also quashed several subpoenas which plaintiff had served. On October 3, 1996, at the conclusion of the hearing, the Court made the following finding of facts.

Within a few days of the publication of the article in February, Robert Soto, ["Soto"] Assistant Director of the NSF , ordered a National Crime Information Computer ["NCIC"] check on Lee J. Rohn. (Pl. Ex. 22.) Internal NSF memorandums introduced at the hearing confirmed the testimony of Achille Tyson, one of the NSF agents involved in the December video surveillance, that Soto assigned Tyson to investigate Mr. Jacobs, which included pursuing the red jeep connection to Lee Rohn. (E.g., Pl. Exs. 13 & 14.) A case file was opened under the name of Lee J. Rohn (Pl. Ex. 13-18.) and surveillance photographs were taken of Rohn's Jeep, of Rohn talking with Anderson outside of the Jeep, and of Anderson's home. (Pl. Exs. 6-12.) The existence of these photos was made known to Soto, who told Tyson "this is great," (Pl. Ex. 21) and according to Tyson, requested further surveillance of Rohn. Tyson elaborated on this at the hearing, testifying Soto told him that this

type of surveillance was just what Mr. Davila wanted.[2] Mr. Anderson received anonymous phone calls that he was under surveillance and eventually received copies of the surveillance photos (Pl. Exs. 6-12), which were surreptitiously and anonymously delivered to his car. Anderson had earlier accidentally come upon information that the police had attempted to get a pen register placed on his home phone. (Pl. Ex. 1.) There was also evidence of concern among the NSF agents of the possibility of wiretapping and the use of pen registers against them. (Pl. Ex. 19.)

■ Upon consideration of this and other evidence presented at the hearing, the Court found that the defendants had engaged in surveillance of Peter Anderson and Lee Rohn as a direct result of the lawsuit Mr. Anderson filed. The Court noted that the initial efforts to determine the ownership of the red Jeep and Mr. Jacobs' connection to it were properly based upon reasonable suspicion arising from information received in an ongoing criminal investigation of drug activity. By late February 1996, however, what may have started as a proper investigation was converted and perverted into an effort to "dig up dirt" on Rohn and her client in response to the lawsuit. The Court held that considering these facts, a permanent injunction preventing harassment of Anderson and Rohn in response to the filing of the lawsuit was appropriate.

Defendants filed a notice of appeal with the Court of Appeals for the Third Circuit on October 17, 1996. Additionally, on October 21, 1996, defendants filed a motion and application in this Court for a stay of the Court's October 16, 1996 permanent injunction order. Subsequently, on November 4, 1996, defendants filed a memorandum of law in support of this motion. The issues presented in this motion and memorandum are currently before the Court.

## II. The Legal Standard

■ Rule 62(c) of the Federal Rules of Civil Procedure authorizes district courts to suspend enforcement of injunctions while an appeal is pending. This application for a stay shall be made in this

---

[2] Although there was some confusion among the witnesses, the Director, J. Derek Hill, testified that the Narcotic Strike Force ["NSF"] is a separate agency under the Office of the Governor and that he reports directly to defendant Ramon Davila as the Virgin Islands' "Drug Czar."

district court which issued the injunction in question. FED. R. CIV. P. 62. There are four factors which the courts consider in determining whether a stay should be granted. The factors are:

(1) Whether the applicant has made a strong showing that he is likely to prevail on the merits of the appeal;

(2) Whether the applicant will be irreparably harmed absent a stay;

(3) Whether the issuance of a stay would substantially harm other parties in the litigation; and

(4) the public interest.

*Hilton v. Braunskill*, 481 U.S. 770, 95 L. Ed. 2d 724, 107 S. Ct. 2113 (1987); *Republic of Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).

The four factors are not designed to serve as a rigid formula. *Id.* Rather, the issuance of a stay should be analyzed on a case-by-case basis by examining the particular facts of the case presented and balancing the different factors. *Hilton*, at 777; *Republic of Philippines*, at 658. If the Court determines that the factors balancing in favor of a stay outweigh those favoring a denial of a stay, then a stay should be granted.

## III. Discussion

### A. Likelihood of Prevailing on Appeal

█ The moving party, in seeking a stay, must demonstrate a substantial likelihood of success on the merits upon appeal. *Florida Businessmen for Free Enterprise v. City of Hollywood*, 648 F.2d 956 (5th Cir. 1981); *Bradley v. School Board of City of Richmond*, 456 F.2d 6 (4th Cir. 1972). The movant bears a heavy burden in showing a likelihood of success on the merits. *Blankenship v. Boyle*, 145 U.S. App. D.C. 111, 447 F.2d 1280 (D.C. Cir. 1971); *Belcher v. Birmingham Trust Nat. Bank*, 395 F.2d 685 (5th Cir. 1968). Most commonly, the appellant will be unable to meet this standard and the stay will be denied. *See* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2904 (2d ed. 1995) (collecting cases).

319

## 1. Probability of Success

To justify the granting of a stay, however, a movant need not always establish a high probability of ultimate success on the merits of the appeal. *Ohio ex rel. Celebrezze*, 812 F.2d 288, 290 (6th Cir. 1987) (citing *Cuomo v. United States Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C.Cir. 1985)). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movant will suffer absent the stay. *Michigan Coalition v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). This proportionality is not without its limits; at a minimum, the movant is required to show "serious questions going to the merits." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). In other words, the movant must either show a likelihood of success on the merits of the appeal and irreparable harm if the stay is not issued, or at least serious questions about the merits of the injunction and an even higher degree of irreparable harm than is normally required.

## 2. Standard of Review

■ In determining the likelihood of success on the merits of the appeal, it is important to note the standard of review which a court of appeals will use on review of the granting of an injunction. In order to succeed on the merits of an appeal, a movant must prove to the court of appeals that the district court abused its discretion in making its decision regarding a preliminary injunction. *Merrell-National Laboratories, Inc. v. Zenith Laboratories, Inc.*, 579 F.2d 786, 791-792 (3d Cir. 1978); *United States v. Commonwealth of Pennsylvania*, 533 F.2d 107 (3d Cir. 1976); *Securities and Exchange Commission v. Senex Corp.*, 534 F.2d 1240 (6th Cir. 1976). The trial court's factual determinations underlying its decision must be accepted unless clearly erroneous. *Merrell National Laboratories, Inc.*, 579 F.2d at 792; *United States v. Ingersoll-Rand Co.*, 320 F.2d 509, 525 (3d Cir. 1963).

In their motion for a stay of the Court's order of injunctive relief, the defendants first challenge the factual findings which the Court made during the hearing on October 2 and 3, 1996. While defendants brought forth evidence in an attempt to show that no surveillance of Anderson or Rohn had been conducted solely as a

result of the lawsuit, there is no reason for the Court to revisit its factual findings. The Court remains convinced that both Peter Anderson and Lee Rohn were subjected to illegal surveillance as a result of the filing of the lawsuit against the defendants.[3]

■ Even if the Court were to find that defendants have presented a reasonable alternative interpretation of the evidence, the defendants would still fail in meeting their burden of showing a likelihood of success on the merits. The Court is convinced that its factual findings are based on a reasonable interpretation of the evidence as presented, and would be accepted by the Court of Appeals. A reviewing court is obliged to accept the trial court's findings unless they are clearly erroneous. The District Court "need not permit relitigation of a preliminary injunction." *Merrell National Laboratories, Inc.*, 579 F.2d at 792. Defendants attempt to recharacterize the factual findings in this case fails to show a likelihood of success on the merits of the appeal.

### 3. Findings of the Court

Defendants argue, in a manner which defies logic, that they are likely to succeed in their appeal based on the fact that plaintiff was successful in gaining injunctive relief. According to this argument, since plaintiff alleged that the surveillance violated his rights under the First and Fourteenth Amendments, and he successfully petitioned the Court for an injunction preventing *further* violation of his rights, the injunction is somehow now unlawful, since there is no *current* violation of his constitutional rights. *See* Defendants' Memorandum of Law in Support of Defendants' Motion and Application For Stay of October 16, 1996 Permanent Injunction Order, pp.13-14. This argument is nonsensical. The fact that the unlawful course of conduct pursued by defendants did not *suc-*

---

[3] On page 13 of the Memorandum of Law in Support of Defendants' Motion and Application for Stay of October 16, 1996 Permanent Injunction Order, defendants' counsel alleges and appears to support much of the argument as to the likelihood of success of appeal on the bold assertion that much of the evidence presented in this case was manufactured by NSF Agent Achille Tyson due to his animosity against NSF Assistant Director Robert Soto, and that the Court came to an erroneous conclusion in considering this evidence. This serious charge simply is not supported by the credible evidence presented at the hearing; there was no affirmative evidence presented to show that Agent Tyson "manufactured" anything.

*cessfully* chill the rights of Peter Anderson to freedom of association and unobstructed access to the courts does not somehow make that illegal behavior lawful, much less even tolerable.[4] In fact, defendants' argument would lead to the absurd result that all injunctions would be overturned on appeal, since the conduct complained of would no longer be occurring.

Defendants also argue that they are likely to succeed in demonstrating that the surveillance was not unlawful. Correctly stating that the Fourth Amendment prohibits only unreasonable searched and seizures, defendants examine each separate activity which the Court considered at the evidentiary hearing, and conclude that none of the individual actions taken by defendants were per se unconstitutional. The assertion is that defendants will succeed on appeal since no individual action is unconstitutional as a matter of law.

Counsel simply misses the point. First, the Supreme Court has consistently and clearly articulated that determinations of probable cause, reasonable suspicion, and the reasonableness of searches and seizures are made on the basis of the totality of the circumstances. *See, e.g., Florida v. Bostick*, 501 U.S. 429, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991); *Tennessee v. Garner*, 471 U.S. 1, 85 L. Ed. 2d 1, 105 S. Ct. 1694 (1985); *Cupp v. Murphy*, 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000 (1973); *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); *Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963). At the evidentiary hearing, the Court issued its injunction based upon an examination of all the circumstances which showed that the defendants had engaged in a series of actions, the totality of which constituted an unlawful surveillance of the plaintiff and his attorney, devoid of either probable cause or reasonable suspicion.

---

[4]Defendants also point to Attorney Rohn's numerous statements to the press following the hearing on October 2-3 as evidence that free speech has not been chilled by defendants' conduct. This argument misses the mark, however, as the most inflammatory statements made by Attorney Rohn occurred after the Court granted the plaintiff's request for injunctive relief. Activity occurring after the injunction was issued may serve as proof that the relief granted by the Court has successfully protected the plaintiff's rights, but it cannot be used to change the nature of the activity which necessitated the injunction in the first place.

Moreover, the evidence established that surveillance was done in order to chill the plaintiff's meaningful access to the courts, a constitutional right protected under the First Amendment.[5] The Supreme Court has consistently viewed the right of access to the courts as a constitutionally protected right, in both civil and criminal matters. *Lewis v. Casey*, —U.S. —, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996); *Patterson v. McLean Credit Union*, 491 U.S. 164, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989); *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering*, 476 U.S. 877, 90 L. Ed. 2d 881, 106 S. Ct. 2305 (1986); *Bounds v. Smith*, 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977). In order to vindicate plaintiff's constitutional rights, the Court enjoined any further obstruction of the plaintiff's access to the courts. It is clear that defendants' argument that each individual action was not a per se constitutional violation is irrelevant, since the totality of the actions was designed to chill the plaintiff's constitutional right of access to the courts.

### 4. Appealability of the Court's Order

■ In order for this appeal to be successful, the defendants must establish that the order is, in fact, appealable. As a general rule, an order involving injunctive relief issued before the entry of a final judgment may be appealed under the statutory exception to the final judgment rule in 28 U.S.C. § 1292(a)(1), by which the courts have the authority to review interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). *See also, Merrell-National Labs., Inc. v. Zenith Labs., Inc.*, 579 F.2d 786 (3d Cir. 1978).

There is, however, an exception to this exception. An order restraining the conduct of the parties or their counsel or directing them to undertake some act that is unrelated or merely incidental to the substantive issues in the main action is outside the scope of section 1292(a)(1). *See*, 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER

---

[5]The First Amendment of the United States Constitution is made applicable to the Virgin Islands in the Revised Organic Act of 1954 § 3; 48 U.S.C. § 1561. The Revised Organic Act of 1954 is found at 48 U.S.C §§ 1541-1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, 73-177 (codified as amended) (1995) ["Revised Organic Act"].

AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2962 (2d ed. 1995). This Court's order granted Anderson injunctive relief to protect his right of access to the courts, relief which is incidental and unrelated to the underlying merits of the employment discrimination complaint.[6] As such, the order is not appealable under the Third Circuit precedent of *Rodgers v. U.S. Steel*, 541 F.2d 365, 373 (3d Cir. 1976).[7] The defendants obviously have no chance of success on the merits of an appeal of an order which they have no right to appeal.

## B. Irreparable Harm

Defendants must show a particularized harm which they have suffered or will suffer.[8] Defendants state they suffered irreparable harm from lack of adequate notice of the hearing on the preliminary injunction, asserting that counsel did not receive the five

---

[6] The Court of Appeals for the Second Circuit explained the necessary relationship for appealability by stating "We think it better . . . to continue to read Section 1292(a)(1) as relating to injunctions which give or aid in giving some or all of the substantive relief sought by a complaint . . . and not as including restraints or directions in orders concerning the conduct of the parties or their counsel, unrelated to the substantive issues in the action, while awaiting trial." *International Prods. Corp. v. Koons*, 325 F.2d 403, 406 (2d Cir. 1963)

[7] The Third Circuit Court of Appeals has consistently followed the decision announced in Rodgers that injunctive relief which is not related to the ultimate relief sought is not appealable under § 1292(a)(1). *See, e.g., Hoots v. Commonwealth of Pennsylvania*, 587 F.2d 1340, 1348 (3d Cir. 1978); *Yakowicz v. Commonwealth of Pennsylvania*, 683 F.2d 778, 783 (3d Cir. 1982); *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1072 (3d Cir. 1983); *New Jersey State Nurses Association v. Treacy*, 834 F.2d 67, 69 (3d Cir. 1987); *Hershey Foods Corp. v. Hershey Creamery Co.*, 945 F.2d 1272, 1277 (3d Cir. 1991); *Praxis Properties Inc. v. Colonial Savings Bank, S.L.A.*, 947 F.2d 49, 54 (3d Cir. 1991).
The wisdom of the rule announced in *Rodgers* has not been questioned by other Courts of Appeals. Other circuits have independently come to an identical result to that reached by the Third Circuit. *See, e.g., Rosenfeldt v. Comprehensive Account Serv Corp.*, 514 F.2d 607 (7th Cir. 1975); *Ronson Corp. V. Liquifin Aktiengesellschaft*, 508 F.2d 399 (2d Cir. 1974); *Siebert v. Great Northern Developmental Co.*, 494 F.2d 510 (5th Cir. 1974); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770 (2d Cir. 1972); *International Prods. Corp. v. Koons*, 325 F.2d 403 (2d Cir. 1963); *Fidelity Trust Co. v. Board of Educ. Of City of Chicago.* 174 F.2d 642 (7th Cir. 1949).

[8] Defendants have asserted that injunctive relief should not have been issued due to a stigma that may be associated with it. *See* October 3 Tr. at 208. Since embarrassment is not a recognized ground for establishing irreparable harm, any stigma on the defendants is not relevant in evaluating requests for injunctive relief or stays of relief. *See, Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991). As pointed out in the Order, moreover, any embarrassment defendants suffer from being enjoined is self inflicted. *See,* Memorandum of Law Attached to the October 16th Order, p. 16, fn. 5

days' notice allowed by Fed. R. Civ. P. 6(d). Defendants further clam that this constituted per se reversible error, citing *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991). What defendants fail to point out, however, is that the appellants in *Williams* did not receive notice of the motion until after an injunction had already been entered restraining their conduct. Here, on the other hand, the injunction was entered only at the conclusion of a vigorously contested two-day evidentiary hearing in which the defendants and their counsel fully participated. Moreover, defendants had been placed on notice within two weeks of the filing of Anderson's complaint by the motion for a temporary restraining order filed on September 19. Then, on September 27, the Magistrate Judge issued a written notice to the parties that the hearing on injunctive relief would be held on October 2. In addition to being given five nonbusiness days' notice of the hearing, defendants had been served with copies of the motion for a temporary restraining order on September 20, 1996, a full twelve days before the hearing was held.

In confirmation that they had adequate notice, before the hearing defendants filed several motions accompanied by detailed legal memoranda, including a motion to have plaintiff's counsel disqualified, a motion to quash subpoenas, and a motion to strike exhibits. Counsel even filed a notice of intent to file a written response to plaintiff's request for a preliminary injunction. If extra time was necessary, counsel certainly could have filed a motion for a continuance with their other motions.[9]

---

[9] During a telephone conference with the Court the evening before the hearing, counsel for defendants raised various issues, including their motion to disqualify Attorney Rohn and the issuance of various subpoenas. Although the opportunity was certainly available for defendants' to ask for a continuance, no such request was mentioned.

Defendants did eventually request a continuance, but not until the hearing resumed after lunch on October 2, and after considerable testimony had already been received. The ground was that any factual findings to be made by the Court could have significant implications on the ultimate resolution of the case. When informed that any findings of fact would be for the preliminary injunction only, and would not serve as grounds for collateral estoppel or res judicata at a trial on the merits before a jury, defense counsel stated that "I understand. I'm sorry." (Hearing of October 2, Tr. at 73.) Apart from the question of whether a motion for a continuance made during the middle of hearing could be considered timely, defendants withdrew any motion when informed that the facts found by the Court would have no bearing on any ultimate trial before a jury.

Moreover, courts are granted considerable discretion when the urgency that is characteristic of preliminary injunctions warrants a hearing on less than five days' notice. *See* 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2949 (2d ed. 1995). In such situations, the court has discretion under Rule 6(d) to modify the period for giving advanced notice. *Tannery Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804 (9th Cir.), *cert. denied*, 375 U.S. 821, 11 L. Ed. 2d 55, 84 S. Ct. 59 (1963). *Accord Merrell-National Laboratories, Inc. v. Zenith Laboratories, Inc.*, 579 F.2d 786 (3d Cir. 1978); *Arthur Treacher's Fish and Chips, Inc. v. A&B Management Corp.*, 519 F. Supp. 739 (E.D.Pa. 1981). Since the violations complained of by the plaintiff were severe Constitutional violations, and the request for injunctive relief was filed thirteen days before the hearing was held, the Court was acting well within the limits of its discretion when it scheduled the hearing for October 2, 1996. Absent a showing of substantial prejudice, the Court does not consider its scheduling to be an abuse of discretion.

Defendants also assert that irreparable harm exists where an injunction intrudes upon the operation of a state agency, citing *Block v. Rutherford*, 468 U.S. 576, 82 L. Ed. 2d 438, 104 S. Ct. 3227 (1984), for the proposition that federalism discourages intrusive remedies. *Block* is totally inapposite, however, for it dealt with federal intrusion into the treatment of pre-trial detainees, for whom the state courts had already determined that there was probable cause to bind over for trial. There has been no criminal investigation of Peter Anderson, or even any suggestion of any illegal activity by him with which this Court could interfere. Clearly, *Block* does not stand for the proposition that the federal courts cannot protect a citizen's freedom of access to the courts. Supreme Court precedent is most definitely to the contrary — a State or territory and related governmental agencies may not inhibit a citizen's lawful access to the courts. E.g., *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 85 L. Ed. 2d 652, 105 S. Ct. 2265 (1985) (an attorney cannot be prohibited from publishing and disseminating truthful information which may encourage further lawsuits by additional claimants); *Sure-Tan, Inc. v. National Labor Relations Board*, 467 U.S. 883,

896, 81 L. Ed. 2d 732, 104 S. Ct. 2803 (1984) (the National Labor Relations Act must be construed in a manner which does not inhibit citizens' access to the courts as guaranteed by the First Amendment); *Boddie v. Connecticut*, 401 U.S. 371, 380, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971) (A statute requiring payment of fees and costs by indigent women seeking welfare benefits and divorces was unconstitutional and warranted injunctive relief). The Court is confident that federalism does not require it to turn a blind eye to the blatant constitutional violations it has found in the defendants cohesive plan to frustrate Mr. Anderson's constitutionally protected access to the courts.

Defendants claim that this injunction exposes them to irreparable harm because it intrudes upon the operations of the NSF in that it prevents any surveillance of Lee Rohn or Peter Anderson. This simply is a mischaracterization of the Court's Order. The Court sculpted the injunctive relief in as narrow a manner as possible while still maintaining its desired effect. The defendants are only prevented from conducting operations against two people: Peter Anderson and Lee Rohn. (*See* Order of October 16, p. 18.) Moreover, upon an ex parte showing to this Court that reasonable suspicion or probable cause exist, they will even be allowed to conduct legitimate investigations of either or both Anderson or Rohn. Given the ample evidence that the NSF is an agency seriously out of control, the Court's modest requirement that the agency comply with well-established legal standards can hardly constitute the infliction of irreparable harm to its operations. Moreover, it is difficult to fathom how the NSF will suffer irreparable harm from being prevented from engaging in surveillance of Anderson and Rohn, since the defense has consistently maintained the position that no surveillance of Peter Anderson was ever performed by any member of the NSF, the Police Force, or any other individuals under the control of the defendants. (*See, e.g.*, Testimony of Robert Soto, October 2, 1996, Tr. at 190.) Most importantly, the defense admitted that the nine month 'investigation' had been fruitless (*See* Testimony of Robert Soto on October 3, 1996 Tr. at 53) and that the investigation is closed. (October 3, 1996 Tr. at 55). The defendants' contention that the injunction will jeopardize confidential information and prevent the NSF from

pursuing tips in a timely manner is similarly without basis. Giving the defendants the benefit of a less than reasonable doubt, I will assume that they were not seriously suggesting that this Court is incapable of safeguarding confidential information submitted to it in connection with a criminal matter.

The defendants also state that there have been numerous challenges to the managerial decisions of NSF Director J. Derek Hill since the hearing. Such challenges are precisely the types of matters which the Court explicitly stated that it had no interest in, unless the challenges were in response to retaliation against witnesses or attempts to influence further testimony of witnesses. (See Memorandum attached to the Order of October 16, pp. 19-20.) The Court remains confident that adequate mechanisms exist in the NSF and the Virgin Islands Police Department which allow for the maintenance of the necessary discipline while meeting the norms of due process.

## C. Balance of Hardships

The Court has been presented with no basis upon which to reassess its balancing of the hardships in favor of the plaintiff. Since the defendants maintain that they did not conduct the enjoined surveillance, how can they be harmed by an injunction preventing them from doing what they say they are not doing? The Court, nevertheless having found that such illegal surveillance had been underway, finds that a stay of the injunction would subject Mr. Anderson to the danger of obstruction of his constitutional right to unimpeded access to the courts. (See Order of October 16, pp. 12-13.)

## D. Public Interest

The Court is similarly unmoved by defendants' arguments that the public interest dictates that a stay be granted. The injunction is sufficiently narrow to protect the public from the danger of overbreadth and allows the defendants to carry out their duties in an effective manner. (*See* Order of October 16, pp. 16-17.) There is absolutely no basis for the slightest suggestion that this Court's Order will give potential lawbreakers a sanctuary from police investigation. On the contrary, the Court has found that the public

interest will be best served by restraining illegal activities by those who are supposed to enforce the law and by confining them to proper investigations based upon legal grounds for the purpose of fighting crime.

## IV. Conclusion

■ Defendants have asked the Court to issue a stay of the injunction which the Court granted after the hearing on October 3, and entered as a written order on October 16, 1996. The factors which a court must weigh in evaluating a request for a stay are largely the same factors which a court must balance in initially granting injunctive relief. Defendants have suggested no new evidence which would vary the Court's factual findings. Instead, defendants offer an alternative reading of the evidence, which the Court rejected at the hearing and rejects here. The defendants have failed to show that the Court abused its discretion or came to a clearly erroneous conclusion in granting injunctive relief. Without such a showing, defendants are unlikely to succeed on the merits of their appeal, assuming, *arguendo*, that the order is appealable. Defendants have failed to show that the balance of hardship weighs in their favor, or that they have suffered any significant harm, let alone irreparable harm. Absent such a showing, and since the public interest is best served by a denial of the stay, the defendants' request for a stay of the Court's October 16, 1996 permanent injunction order will be denied.

ENTERED this 27th day of November, 1996.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that defendants' Motion and Application for Stay of October 16, 1996 Permanent Injunction Order is DENIED.

ENTERED this 27th day of November, 1996.