**JENNIFER CALLWOOD and DERRICK CALLWOOD, Plaintiffs**

**v.**

**ELIZABETH CRUSE, Defendant. CASSANDRA VINCENT
and MIGUEL PEREZ, Plaintiffs**

**v.**

**ELIZABETH CRUSE, Defendant**

Small Claims Nos. 16/2006, 17/2006

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

April 18, 2006

KENDALL, *Judge*

## MEMORANDUM AND OPINION

(April 18, 2006)

THIS MATTER is before the court on *pro se* Defendant's "Motions to Stay" pending appeal of this Court's February 28, 2006 Judgment in both of the above-captioned matters. As both claims arise from identical transactions, the Court will consolidate the cases for purposes of its ruling and based upon the reasons set forth below, the Motions will be denied.

## I. FACTUAL BACKGROUND

On or about September 19, 2005, *pro se* Plaintiffs, Mr. Derrick and Mrs. Jennifer Callwood and Ms. Cassandra Vincent and Mr. Miguel Perez (collectively "Plaintiffs") separately gave $5,000.00 to Defendant, Ms. Elizabeth Cruse ("Defendant") to join a group known as the "Women's Gifting Circle" ("Women's Gifting Circle" or "Circle"). Plaintiffs claim that in consideration of the $5000, they expected to receive $40,000.00 in two weeks. When they did not receive the money, Plaintiffs approached Defendant and requested the return of their $5000.00. Defendant refused. Plaintiffs brought these actions, claiming that Defendant was indebted to them for the $5,000.

At trial, Plaintiffs testified regarding their intentions and expectations in entering the Circle and proffered a nine (9) page document[1] describing the "Circle."

The document set forth, *inter alia,* the operation of the Circle and the duties of the various levels of its members and states in pertinent part:

> Each woman who participates gives a gift of $5,000 to another woman in the circle. Each of us who have entered the circle have given that same gift to one of our sisters. Within the circle you enter, there are a total of 15 women at any given time who participates ... Each woman "cycles" through the circle as new women join, ultimately receiving the sum of $40,000 ...[2],

Though Defendant denies that the Circle is a "pyramid scheme", the diagram of the "Table" resembles an inverted pyramid of fifteen (15) positions.[3] The first level consists of eight (8) "appetizers". The next level consists of four (4) "soup and salad" positions, followed by two (2)

---

[1]    The document was admitted into evidence as Plaintiffs' Exhibit # 2. It included a diagram of the "Circle" on the front page, a middle section of seven (7) pages describing the Circle and a "Gifting Statement" attached at the end.

[2]    Pls. Ex. 2 at 1. The document contains no page numbers, but rather seems to be composed of three parts described in footnote one. For the purposes of this Memorandum Opinion, this Court considers the Diagram attached to the front of the document to be page (i); The next page beginning with the heading "The Women's Gifting Circle" to be page 1, continuing to page 7; and the "Gifting Statement" at the end of the Exhibit to be the Appendix.

[3]    The Circle referred to its members by different place settings at a table, not unlike a dining table.

"entrees", leading up to the one (1) "dessert."[4] The object, more or less, is to move from "appetizer" to "dessert" to get the $40,000.00 by paying in the entry amount $5,000.00 and getting as many other women to join as possible.

The document also outlines the "rules" of the Circle which Plaintiffs would have to follow to "fulfill [their] obligation"[5] and "receive support."[6] Essentially, Plaintiffs were required to "gift" $5,000.00 by money order, cashier's check or cash[7] to Defendant and sign a "Gifting Statement" declaring the money so given "is a gift, freely given to [Defendant] without consideration ... This is strictly a gift and I expect nothing in return."[8]

The Callwood Plaintiffs testified that they did not sign nor give Defendant the "Gifting Statement." Defendant, on the other hand, testified otherwise and proffered a "Gifting Statement," allegedly signed by Plaintiff Mrs. Jennifer Callwood. However, Mrs. Callwood testified that the handwriting on the Gifting Statement is not hers and that her name is misspelled. In the case of Plaintiffs, Vincent and Perez, both testified that neither of them signed a Gifting Statement. Nonetheless, in both cases, Defendant maintained that the funds were given to her as a gift and as such Plaintiffs have no right to their return.

It is uncontroverted that Plaintiffs gave $5,000.00 to Defendant. Police Officer Elizabeth Doss testified that she received the monies from Plaintiffs and gave them to Defendant. Plaintiffs further testified that on several occasions they advised Defendant of their desire to opt out of the Circle and requested refund of their monies but that despite promising to do so, Defendant failed to do so.

Based upon the testimony of the parties and witnesses and the exhibits, the Court found that there was no donative intent on the part of Plaintiffs to give Defendant their money. Based upon this finding the Court concluded that as a Court sitting in Equity, the doctrine of "unjust enrichment" required that Defendant reimburse Plaintiffs the monies given to her by them. It therefore entered Judgment for Plaintiffs,

---

4    *Id.* at i.
5    *Id.* at 4.
6    *Id.* at 3.
7    *Id.* at 4-5.
8    *Id.* at App.

whereupon Defendant immediately filed a "Notice of Appeal" and moved to stay the Judgments pending appeal.

## II. DISCUSSION

### A. The Standard for Evaluating a Motion to Stay

■ In deciding whether to grant a "Motion to Stay", the Court must consider the following four (4) factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; (4) where the public interest lies.

*Republic of Phillipines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). *See also, Anderson v. Government of the Virgin Islands*, 947 F. Supp. 894, 897, 35 V.I. 314 (1996). These factors do not represent a rigid formula, but should be individualized for each case presented to the court. *Philippines, supra* at 658, citing *Hilton v. Braunskill*, 481 U.S. 770, 777, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987). Thus, this Court will analyze each of the four factors in light of the particular facts of this case.

### i. Likelihood of Success on the Merits

#### a. No New Argument Presented.

■ Defendant is not likely to succeed on the merits of her appeal because she has demonstrated no showing of such a likelihood. In *Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189, 191, 36 V.I. 333 (1997), the Court, in denying a Motion for Stay of Judgment Pending Appeal, noted that:

> Defendant presents no new arguments as to why the [judgment] granted by the Court against defendant was improper. From the [Motion] currently before the Court, it can only be assumed that defendant intends to base [her] appeal on the same arguments which this Court considered and rejected when [judgment] was granted in plaintiff[s'] favor against the defendant. Those arguments possess no more merit now than they did previously.

As in *Pemberton,* Defendant's Motion is devoid of any "new arguments" regarding the impropriety of the Judgment herein, thus it must be assumed that she is relying on the same arguments posited at Trial which were considered and rejected. Since Defendant has offered no new claim or argument, she is not likely to succeed on appeal.

### b. The Quasi-Contractual Relationship Between the Parties.

Defendant is also not likely to succeed on appeal given the nature of the relationship between the parties. The essence of the parties' relationship is one of quasi-contract. A claim of quasi-contract "is not a 'real' contract based on mutual consent and understanding of the parties." *Baer v. Chase,* 392 F.3d 609, 623 (3d Cir. 2004). Rather, it is a legal fiction created in law to "impute a promise to perform a legal duty such as [to] repay money ..." *Baltimore & Ohio R. Co. v. United States,* 261 U.S. 592, 597, 43 S. Ct. 425, 427, 67 L. Ed. 816, 58 Ct. Cl. 709 (1923). *See also, Luden's, Inc. v. Local Union No. 6 of the Bakery, Confectionery and Tobacco Workers' International Union of America,* 28 F.3d 347, 364 n29 (3d Cir. 1994) ("a '[quasi-]contract' is not predicated 'on the apparent intention of the parties to undertake the performances in question.' RESTATEMENT (SECOND) CONTRACTS § 4 Cmt. b (1981); *accord,* 1 CORBIN ON CONTRACTS § 19, at 44 (defining a quasi-contract as 'an obligation that is created by the law without regard to expression of assent by either words or acts')").

█ To recover on a claim of quasi-contract, Plaintiffs must show (1) that they conferred a benefit upon Defendant; (2) that Defendant accepted the benefit; and (3) that the retention of the benefit by Defendant would be unjust and result in an inequity. *See Fischer Imaging Corp. v. General Elec. Co.,* 187 F.3d 1165, 1172-73 (10th Cir. 1999); *Midcoast Aviation, Inc. v. General Elec. Credit Corp.,* 907 F.2d 732, 737 (7th Cir. 1990); 66 AM. JUR. 2d *Restitution and Implied Contracts* § 11 (2005); *accord, Media Services Group, Inc. v. Bay Cities Communications, Inc.,* 237 F.3d 1326, 1330-31 (11th Cir. 2001) (describing the claim as one of unjust enrichment). Thus, "the essence of a quasi-contract claim is not the expectancy of the parties, but rather the unjust enrichment of one of them." *Baer, supra,* 392 F.3d at 623.

In the instant case, there can be no doubt that Plaintiffs conferred a benefit upon Defendant. Plaintiffs separately gave her $5,000.00 in the belief that they were entering into an agreement to have the money

refunded to them eight-fold in two weeks time. It is uncontroverted that Defendant accepted the benefit and testified to receiving the funds. She further testified that she received it in relation to the Circle.

Allowing Defendant to retain the funds would result in an injustice for several reasons. Plaintiffs did not request that Defendant pay the $40,000.00 they expected to receive from participating in the Circle. Rather, they simply requested the money delivered to Defendant be returned to them as they no longer wished to participate in the Circle. In desiring to exercise their right to opt out of the circle, the testimony of the witnesses showed that others have opted out of the Circle and have had their monies or some portion thereof returned to them. *See* Pls. Ex. 3. Additionally, there is no language in Plaintiffs' Exhibit No. 2 or testimony that Plaintiffs could not opt out of the Circle without receiving a full refund. Thus, allowing Defendant to retain a combined windfall of $10,000.00 she received from Plaintiffs would be inequitable and as such, she would be unlikely to succeed on appeal.

### c. The Defense of Gifting.

At trial, Defendant maintained that the Plaintiffs simply bestowed a gift upon her. The gratuitous nature of such an act will negate a claim of unjust enrichment, as one cannot be unjustly enriched by something freely given. *See* 66 AM. JUR. 2d *Restitution and Implied Contracts* § 14 (2005). The essential elements which must be present to effectuate a gift are (1) donative intent; (2) delivery; and (3) acceptance. *See Remak v. Quinn*, 17 V.I. 552, 555 (D.V.I. 1980); *see also* 38 AM. JUR. 2d *Gifts* § 18 (2005) ("There must be a clear, unmistakable, and unequivocal intention on the part of a donor to make a gift of his or her property in order to constitute a valid, effective gift ...").

The testimony and evidence reveal insufficient proof of donative intent for three main reasons. First, Plaintiffs manifest intent and purpose in joining the Circle was never gratuitous in nature. Plaintiffs filed the Complaint stating that they "entered into an agreement that [they] would pay in $5000 and receive $40,000.00." Thus, Plaintiffs were operating from the standpoint of an agreement, not a gratuity. Additionally, Plaintiffs testified they did not intend to merely provide a gift to Defendant. Their intent from the very beginning in furnishing the money was for one purpose and one purpose only, *i.e.,* a short-term "investment". Their intent was to obtain a return on their "investment",

402

not to make a gift to a person they did not even know. Thus, they never had the requisite donative intent at the time they provided Defendant with the money.

Second, the relationship between the parties is akin to a business transaction and based on bargain and exchange. Plaintiffs testified that Police Officer Doss approached them and persuaded them to give her the money in order to receive $40,000.00. It was clear that if Plaintiffs gave up the $5,000.00 for a couple weeks, they would in return get their money back eight-fold. Not only were they expected to give the $5,000 but they also had to find another person to join the Circle. The fact that Plaintiffs had duties once they relinquished there [sic] monies illustrates that they were conducting themselves as if they had an agreement.

Even Defendant herself, in examining Plaintiff Miguel Perez, stated that the relationship between herself and Plaintiffs was "considered an agreement." Thus, she understood that Plaintiffs were not intending to give a gift, but rather, intended to enter into an agreement whereby she would return their monies plus $35,000 in about two weeks. Defendant knowingly induced Plaintiffs through the medium of Officer Doss to pay her based upon false promises of repayment. She cannot now say that it was just a gift when she knew Plaintiffs' intentions were otherwise.

Moreover, the ability to "opt out" of the Circle and have the "investment" monies refunded belies any donative intent on the part of Plaintiffs. Plaintiffs testified that Defendant made numerous promises to them to return their $5000. Plaintiff Derrick Callwood testified that he called Defendant thirty-eight (38) times between October and November of 2005 and that Defendant assured him time and time again that he would get a full refund. Defendant denies promising Plaintiff that she was going to pay him back. In fact, at least one individual received a refund or some portion of the $5,000 deposited. Specifically, Officer Doss testified that two members of the circle, a Ms. Blackman and Ms. DeCastro were fully or partially refunded after they exercised their right to opt-out of the Circle. Plaintiff Cassandra Vincent also testified that Defendant gave her the option to get out of the Circle and have her money returned to her.

Third, the "Receipt of Gift", identified in both cases as Plaintiff's Exhibit No. 1, does not substantiate Defendant's contention that the money given to her by Plaintiffs was a gift. Officer Doss testified that she delivered the monies on behalf of Plaintiffs Callwood to Defendant.

Defendant then executed a "Receipt of Gift" and caused same to be delivered to Plaintiffs. Simply referring to the funds as a gift does not make it so and does not negate Plaintiffs' non-donative intent.

Additionally, the "Gifting Statement" cannot establish donative intent. Plaintiffs Vincent and Perez' uncontroverted testimony was that they never executed the Statement. With respect to Plaintiffs Callwood, as noted heretofore, Plaintiff Jennifer Callwood testified that her name on it was in effect a forgery.

The document itself is replete with the expectation of receiving monies in exchange for the $5,000.00. Even though the word "gift" or some variation thereof is used over two dozen times, a rational reading of the document negates donative intent on the part of the persons involved. By participating in the Circle and by providing funding and persuading other women to do the same, Plaintiffs expected to "ultimately receive the sum of $40,000." Pls. Ex. 2 at 1. Other phrases that contradict any donative intent include: "It is the intention of this community that at no time will anyone ever lose." *Id.* at 2. "Please know that by inviting you, we are asking you to receive support." *Id.* "we are accountable to each other and ourselves." These phrases taken together and read as a whole tend to illustrate a bargain and exchange relationship. The purpose is clear, *i.e.,* "The Circle intends to "ultimately [pay] $40,000" in exchange for $5,000.00, if you perform your duties as outlined." Plaintiffs had no intention of giving a "gift" but rather every intention and expectation of "investing" their money to make a high return.

Most significant is the timing of Plaintiffs' receipt of the document, gift receipt and gifting statement—after they gave Defendant their money. At no time before relinquishing their money were Plaintiff informed that they would be "gifting it." Donative intent cannot be ascribed to them by Defendant after receiving the monies. Donative intent must be manifested in the donors at the time they donate. Here, the evidence clearly shows Plaintiffs never manifested any intent to donate funds to Defendant.

Clearly, the mere contention that Defendant received the funds as a "gift" is insufficient to demonstrate a gift was created. In sum, the evidence supports Plaintiffs claim that they lacked the donative intent to make a gift. Without the requisite element of donative intent, Defendant's defense fails and as such she is unlikely to succeed on appeal.

404

### d. Equitable Relief.

■ The Court entered Judgment in favor of Plaintiffs based upon the theory of unjust enrichment. "Unjust enrichment is an equitable remedy...typically invoked in quasi-contractual settings, where the plaintiff seeks to recover for a benefit he conferred unto the defendant under an unconsummated or void contract." *In re Estate of McConnell*, 42 V.I. 43, 50 (Terr. Ct. 2000). Where one party is unjustly enriched, restitution must be made by such party to the one at whose expense he was enriched. *See* RESTATEMENT (FIRST) RESTITUTION § 1 (1936).[9]

In the case, *sub judice,* the Court concluded that the parties did indeed have a quasi-contractual agreement whereby Plaintiffs would separately deliver $5,000.00 to Defendant in return for $40,000.00. As it is uncontroverted that Plaintiffs delivered said funds, and having considered and rejected that said funds were a gift, the Court finds that Defendant would be unjustly enriched if allowed to retain the $5,000.00. Thus, restitution was due and proper and as such she is not likely to succeed on appeal.

### ii. Irreparable Injury Absent a Stay.

■ With respect to the second factor to be considered in deciding whether to grant a Motion for Stay Pending Appeal, Defendant has failed to demonstrate that she would be irreparably injured absent a stay. Not only is her bald Motion devoid of any showing of irreparable injury but the Court can think of none that would be visited upon her absent a stay. Having failed to demonstrate that she would suffer irreparable injury absent a stay, Defendant is not likely to succeed on the merits of her appeal.

### iii. Injury to Other Parties Absent a Stay.

■ With respect to the third factor, even though Defendants [sic] might be injured by the failure to immediately obtain the return on their monies in the event a stay were granted, such an injury is not deemed to be substantial, especially where, as here, they will in all probability be entitled to interest earned on those monies pending resolution of the appeal, thus making them whole, if the appeal is unsuccessful.

---

[9] Pursuant to Title 1 V.I.C. § 4, the Restatements of Law are made applicable to the U.S. Virgin Islands.

Accordingly, denying a stay will not result in substantial injury to Plaintiffs.

### iv. The Public Interest.

■ The public definitely has an interest in discouraging the utilization of schemes to defraud its members. The potential for violence and disorder by victims of such schemes cannot be overlooked. To the extent the "Gifting Circle" represents such a scheme, the public cannot reasonably be deemed to condone its existence and operation in the Territory. Thus, the public interest militates against a stay of execution of the Judgment.

Having failed to satisfy any of the factors for a stay, Defendant's Motions must be denied.

### III. CONCLUSION

Based upon the foregoing, the Court finds that Defendant is not entitled to a stay of execution of judgment pending appeal. An appropriate Order will follow.